L. ROBERT LEISNER and EMILY LEISNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leisner v. Commissioner
Docket No. 8149-75.
United States Tax Court
T.C. Memo 1977-205; 1977 Tax Ct. Memo LEXIS 235; 36 T.C.M. (CCH) 864; T.C.M. (RIA) 770205; July 5, 1977, Filed; Motion for reconsideration is denied as amended September 9, 1977. L. Robert Leisner, pro se. W. Robert Abramitis, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1972 in the amount of $1,046.52.The issues for decision are: (1) Whether petitioner, L. Rbert Leisner, is entitled to deduct transportation expenses between Buffalo, New York and Albany, New York, and living expenses while in Albany as business expenses incurred *236 in travel away from home in pursuit of a trade or business of being an employee of the State of New York; and (2) whether, in the alternative, petitioners are entitled to deduct the travel expenses of L. Robert Leisner between Albany, New York and Buffalo, New York, and his expenses for meals in Buffalo and office expenses for an office maintained in a residence in Buffalo and a room in Albany as business expenses as a lawyer. FINDINGS OF FACT
Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife who resided in New York State at the time the petition in this case was filed. They filed a joint Federal income tax return for the calendar year 1972 with the North Atlantic Service Center, Andover, Massachusetts. Petitioner Emily Leisner was during the year 1972 and had been for some years prior thereto a teacher in Buffalo, New York. During the year 1972 petitioner L. Robert Leisner was a hearing examiner with the State of New York Department of Taxation, having obtained this position and commenced his work as a hearing examiner in June of 1970. Prior to June of 1970, L. Robert Leisner (hereinafter petitioner) was engaged *237 in the private practice of law in Buffalo, New York. Petitioner and Mrs. Leisner resided prior to June of 1970 in a home at 1 Arundel Road, Buffalo, New York, and Mrs. Leisner continued to reside in this home throughout the calendar year here involved. The position petitioner obtained as a hearing examiner with the State of New York Department of Taxation in June 1970 had as its post of duty Albany, New York. Petitioner prior to June 1970 took a competitive Civil Service examination for a position of hearing examiner with the State of New York. He made a sufficiently high mark to be interviewed with respect to a position in several agencies of the State of New York, but none of the agencies offered him an appointment in Buffalo. Therefore, he chose to accept a position with the New York State Tax Commission with head-quarters in Albany. Petitioner rented a furnished room in Albany, New York. His work as a hearing examiner with the New York State Tax Commission required him to hold hearings in Binghamton, Utica, Syracuse, New York City and occasionally in Buffalo or Rochester, New York. He was usually away from Albany one week a month for approximately 9 months of each year *238 holding hearings in connection with his work as a hearing examiner and the balance of the time was in Albany. When petitioner was away from Albany he was paid a stated per diem for living expenses. Petitioner did not include this per diem in the income reported on his return. The appointment petitioner received as a hearing examiner with the New York State Tax Commission was an indefinite appointment. Petitioner remained in this position until May of 1976 when he accepted a position as hearing examiner with another agency of the State of New York with his headquarters located in Albany. Soon after petitioner began his work as a hearing examiner for the State of New York he became dissatisfied with certain aspects of the work. Also, he later became aware that there was under consideration in the New York legislature the establishment of a New York state tax court and he was of the opinion that hearing examiners with the New York State Department of Taxation would not be needed if a state tax court were established. Beginning in late 1970 and continuing into the year 1972, petitioner attempted to obtain other positions with the State of New York or with the Federal Government. *239 He unsuccessfully attempted to obtain a hearing examiner position with the State Labor Department at Buffalo in late 1970. In 1971 he began working on an application for a Federal hearing examiner post. He filed his application on January 26, 1972. The application required listing of cases handled by petitioner, the dates when he worked on the cases, and the issues involved as well as the courts before which the cases were tried with the names of the judges before whom the cases were tried. In June 1972 petitioner was notified that even though his experience qualified as necessary experience for a Federal hearing examiner, he had not received a passing grade on the examination. Petitioner, on July 20, 1972, traveled from Albany, New York to Washington, D.C. to confer with officials of the Civil Service Commission as to the reason for his failure to pass the examination. On July 21, petitioner flew from Washington, D.C. to Buffalo, New York. Petitioner stayed overnight at the Statler Hotel in Washington, D.C. on July 20. He also took taxicabs from the airport to the hotel and to several Government offices while in Washington, D.C. During the 1960's petitioner represented *240 an indigent, Carl DeFlumer, Jr., in various state and Federal courts. Carl DeFlumer, Jr. had originally been arrested in March 1947 when he was 14 years old and later that year convicted on a plea of guilty. Carl DeFlumer, Jr. was serving a life sentence and petitioner, throughout the 1960's, represented Carl DeFlumer, Jr. in various legal proceedings, attempting to have his conviction declared invalid in state trial courts and appellate courts of New York and in the New York Court of Appeals. He also represented Carl DeFlumer, Jr. in the United States Federal District Court and the United States Court of Appeals for the Second Circuit after being unsuccessful in the state courts. In 1970, when petitioner accepted an appointment as a New York State hearing examiner, he ceased to represent Carl DeFlumer, Jr. and the courts assigned another attorney to represent Mr. DeFlumer. Carl DeFlumer, Jr. was a prisoner in the facility at Attica, New York when a riot broke out at that facility on September 9, 1971. As a result of this riot, property of some inmates was destroyed. Carl DeFlumer, Jr.'s family and the attorney then representing Carl DeFlumer, Jr. contacted petitioner and *241 informed petitioner that legal papers belonging to Carl DeFlumer, Jr. were destroyed at Attica and requested petitioner to assist them in reconstructing the legal papers covering the various proceedings in which petitioner had represented Carl DeFlumer, Jr. During 1972, petitioner undertook the task of reconstructing the files with respect to Carl DeFlumer, Jr.'s various court actions. Petitioner never received any payment for work performed for Carl DeFlumer, Jr., nor did he ever expect to receive any payment for this work. While in the private practice of law in the mid to late 1960's, petitioner was co-counsel for the trustee of the bankruptcy estate "In the Matter of Albert W. Dummond, Inc., BK-66-1499." The Dummond bankruptcy required substantial work on the part of petitioner and when petitioner took the appointment in June 1970 as a New York State hearing examiner he had performed legal work in the Dummond bankruptcy case which he listed as having a value in excess of $15,000. Petitioner remained as co-counsel in the Dummond bankruptcy proceedings and did some work in this connection after his appointment as a New York State hearing examiner. Petitioner submitted a list *242 to the bankruptcy court indicating that he had performed during 1972 the following work in connection with the Dummond bankruptcy case: 1972
Jan. 28
Received information for 1971 tax returns
1/4 hr.
Mar. 14
Preparation of tax returns and filing
State and Federal returns
2 hr.
May 26
Listing of accounts rec. and various data
from Bankruptcy schedules
Obtain copy of letter dated Dec. 11, 1970
Stark Construction, OC, Harold Bulan,
Att'y
1-1/2 hr.
May 26
Conf. Bankruptcy Ct. Hon. Beryl McGuire,
re: closing
1/2 hr.
June 1
Letter to Louis Sternberg, Trustee en-
closing copies of tax returns, copy of
Stark letter and closing of bankruptcy
1 hr.
June 7
TC Louis Sternberg, Trustee re: no tax,
tax returns, TC George Navagh, Att'y
re: Stark Construction, closing
1/2 hr.
June 14
Letter from Harold Bulan, Att'y re
Trustee and tax audit
1/4 hr.
June 30
Letter from Harold Bulan, Att'y re: tax locator filing No.
1/4 hr.
June 30
Returned locator documents to IRS center
1/4 hr.
July 6
Conf. G. Navagh, re: Stark Construction
1/4 hr.
Sept. 5
TC G. Navagh, re: Stark Construction
1/4 hr.
Oct. 16
TC Louis Sternberg, Trustee re: Stark
Construction
TC Harold Bulan, Att'y re: Stark Con-
struction
1/2 hr.
Oct. 20
Conf. David Goldstein, Esq., re Stark
Construction
1/4 hr.
Dec. 18
Rec'd letter and papers on Stark Con-
struction from George Navagh
1/4 hr.
*243 Petitioner, at the date of the trial of this case, had not received a fee in connection with his work in the Dummond bankruptcy case, but expects to receive the fee for his work when the bankruptcy case is closed. Prior to the time petitioner took the position as hearing examiner with the State of New York, he had maintained a legal office in downtown Buffalo. Shortly after he took the position as hearing examiner with the State of New York, he moved all his law books, office files, papers, supplies, furniture and equipment from the building in which he had maintained his law office into a 16X26 foot room in the home at 1 Arundel Road, Buffalo, New York. The home at Arundel Road had been built and owned prior to petitioners' acquiring it by a lawyer and the large room had been built on the home with a separate entrance so that it could be used as a law office. When petitioners moved into this home in 1968, petitioner had arranged this large room to be used for a home office and he had used the room as a home office during 1968, 1969 and 1970. In 1970, when petitioner closed his downtown Buffalo law office, he did not have space in the room he was using as a home office for *244 all his files and he stored at least four full four-drawer file cabinets of papers in storage cartons in the cellar of the Arundel Road house and stored other cartons of files in the attic and garage of this house. Petitioner stored certain of the files in connection with the Dummond bankruptcy proceeding in the garage of the house on Arundel Road. When petitioner closed his office in downtown Buffalo he had the number which had been the telephone number in that office answered by an answering service by the name of McLean Business Services, Inc. Petitioner continued employing this answering service until April 1972. During 1972, petitioner paid McLean Business Services $54 for the answering service. There were two telephone extensions in the house on Arundel Road, one of which was located in the large room into which petitioner had moved the furnishings, equipment, files and books from his downtown Buffalo office. During 1972, petitioner paid the telephone company $103.52 for telephone service at the Arundel Road house, $18.88 for long distance calls to Rochester, Albany, Olean, Washington, Gowanda, and Syracuse, [1] *246 and in addition paid $32.37 to the telephone company for maintaining *245 until April 1972 the number which had formerly been in his downtown Buffalo office. In the fall of 1972, petitioner learned that the Fourth Judicial Department of the State of New York had an opening for a lawyer to work in court administration. The trip which petitioner made from Buffalo to Syracuse on a ticket issued on October 9, 1972, was for the purpose of being interviewed for the position with the Fourth Judicial Circuit for work in Western New York. At times petitioner would take the train late on Friday afternoon from Albany to Buffalo and return on Sunday evening or early Monday morning from Buffalo to Albany by plane. Occasionally petitioner would fly from Albany to Buffalo and return from Buffalo to Albany by train.During 1972 train fare from Buffalo to Albany was $15. During 1972, petitioner took some of the boxes containing files in connection with the DeFlumer case to Albany, New York and worked on these files in his room in Albany, and he wrote some letters from this room in Albany. Petitioner was provided by the State of New York in connection with his work as a hearing examiner with office space, a desk, telephone and a secretary in Albany. Albany *247 was the only city in which petitioner's employer furnished him with an office. Petitioner, when away from Albany in connection with his work as a hearing examiner for the State of New York Department of Taxation, would be furnished with a hearing room and working space. When petitioner accepted the position as a New York State hearing examiner in 1970, he discussed with Mrs. Leisner whether they should move their family home to Albany. Mrs. Leisner at that time had a permanent position as a schoolteacher in Buffalo and told petitioner she felt it would be bad for her to move to Albany and give up the security of her work in Buffalo. Petitioner's parents also lived in Buffalo and he had friends in Buffalo. Although petitioner spent much of his time when in Buffalo working in connection with obtaining papers in the DeFlumer case and some of his time on work in connection with the Dummond bankruptcy proceeding, the preparation of his application for a position as a Federal Government hearing examiner and the preparation of his own personal Federal income tax return, petitioner also visited with his family and friends when he was in Buffalo. When he was in Buffalo he stayed at *248 the house on Arundel Road.
On their Federal income tax return for the calendar year 1972, petitioners deducted $2,906.96 as employee business expense of petitioner L. Robert Leisner. This amount was composed of the following items: Airplane, boat, railroad, etc.,
fares
$1,175.96
Meals and lodging
1,328.00
Other travel expenses--cab to
railroad and airport and park-
ing
403.00
The $2,906.96 represented claimed expenses of petitioner in Albany, New York in connection with his work as a hearing examiner for the New York State Department of Taxation. Respondent, in his notice of deficiency to petitioners, disallowed this claimed $2,906.96 in full, explaining that petitioners had failed to establish "that any portion of this amount represents ordinary and necessary expenses incurred while away from home in pursuit of a trade or business." In addition to assigning error in connection with respondent's disallowance of L. Robert Leisner's claimed business expense at Albany, New York, petitioners in the alternative alleged that if the petitioner's home for tax purposes was considered to be at Albany, New York, petitioner should be allowed the plane and railroad *249 fare between Albany and Buffalo, the cab fares to the railroad and airport, and $20 of the claimed parking, as well as office expenses for the office in the home at Arundel Road, laundry and dry cleaning in Buffalo, meals in Buffalo, and office expenses in Albany as business expense in connection with his work on the Dummond bankruptcy case, the D%flumer case and other legal matters. In his petition, petitioner listed the claimed expenses as follows: Albany office expense
$ 281.00
Laundry and dry cleaning
away from home
65.00
Food away from home
630.00
Office expense at Buffalo
518.97
Airplane and Railroad
$1,175.96
Cab to Railroad and Air-
port
383.00
Parking
20.00
At the trial petitioners filed an amendment to petition in which they requested the benefit of income averaging and a deduction for expenses of petitioner L. Robert Leisner incurred for travel during 1972 in seeking new employment in his field of work. Respondent on brief conceded that petitioner was entitled to deduct the $67 cost of petitioner's air fare to Washington, D.C. in connection with seeking a position as a Federal hearing examiner. Respondent's only objection to petitioners' *250 request for the benefit of income averaging was on the ground of relevancy and materiality. Since the record contains petitioners' tax returns for the 4 years preceding the year here in issue, we assume that respondent does not contest petitioners' right to income averaging if in fact after our determination of the issues in this case the income reported by petitioners for the 4 years prior to 1972 is such as to entitle them to the benefit of income averaging. OPINION Section 162(a), I.R.C. 1954, [2] provides for a deduction by a taxpayer of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including traveling expenses "while away from home in the pursuit of a trade or business." The evidence in this case shows that during the entire year 1972 petitioner was engaged as a full-time hearing examiner for the State of New York. Clearly, and petitioner does not argue to the contrary, this was petitioner's primary business. Petitioner contends and respondent denies that petitioner had a secondary business of winding up his law practice in Buffalo, New York. *251 Respondent's disallowance of the deduction claimed by petitioner for travel expenses, including his living expenses in Albany, New York, is proper unless petitioner can show that he was away from home within the meaning of section 162(a)(2) when he was in Albany, New York and that the expenses he incurred in Albany, New York were necessary expenses in the pursuit of his trade or business of being a hearing examiner. This Court has consistently held that the word "home" within the meaning of section 162 refers to the principal place of employment of a taxpayer and not the place where his personal residence is located, if that residence is located in a different place from the taxpayer's principal place of employment. Kroll v. Commissioner,49 T.C. 557, 561-2 (1968). Applying the rule announced in the Kroll case, petitioner's home was in Albany, New York during the entire year 1972 and petitioner would therefore be entitled to no deduction for living expenses while in Albany, New York. However, the United States Court of Appeals for the Second Circuit to which an appeal in this case would lie has held that "home" as used in section 162(a)(2) means "the taxpayer's *252 permanent abode or residence rather than his business headquarters." Six v. United States,450 F.2d 66, 69 (2d Cir. 1971). In Rosenspan v. United States,438 F.2d 905, 912 (2d Cir. 1971), cert. denied 404 U.S. 864 (1971), on which the court relied in the Six case, the court reviewed the various cases decided under section 162(a)(2) and its predecessor provisions, including the Supreme Court cases of Commissioner v. Flowers,326 U.S. 465 (1946); Peurifoy v. Commissioner,358 U.S. 59 (1958); and Commissioner v. Stidger,386 U.S. 287 (1967), and concluded "that 'home' means 'home'" in the normal terminology of the word "home" when used in section 162(a)(2). However, in the Rosenspan case the court stated that generally the same result as to deductibility of traveling expenses away from home will follow under the definition of home as a taxpayer's residence as follows under the definition of a taxpayer's home within the meaning of section 162(a)(2) as his business headquarters. The court pointed out that under the holding in Commissioner v. Flowers,supra, if *253 a taxpayer chooses to maintain his personal residence at a place distant from his principal place of employment, the expenditures in traveling to his principal place of employment and his living expenses at that location are not a result of a business necessity either for him or his employer, but rather the result of the personal desire of the individual.For this reason such expenditures are not deductible business expenditures. The court in the Rosenspan case further pointed out that the same result would be reached under their view of the law in allowing a taxpayer, whose principal place of business was a temporary place of business, a deduction for his expenses when away from his personal residence since, under those circumstances, a taxpayer could not reasonably be expected to move his home to the temporary place of employment and, therefore, his expenses at the temporary place of employment would be business related. Applying the criteria laid down by the Supreme Court in the case of Commissioner v. Flowers, supra, and the criteria set forth by the Second Circuit in Rosenspan v. United States,supra, we conclude that petitioner is not *254 entitled to a deduction for his expenses incurred in traveling between Buffalo and Albany and his living expenses in Albany, New York as ordinary and necessary business expenses of his business of being a hearing examiner for the State of New York. From the facts we have found it clear that petitioner's appointment as a hearing examiner with the New York State Tax Commission was not a temporary position. We further consider it clear that petitioner's maintenance of a personal residence in Buffalo, New York was a personal choice and for his personal convenience and not a necessity of his business of being a hearing examiner for New York State. It is true, as petitioner testified, that he hoped to find other employment in Buffalo. He looked for such employment before he accepted the appointment in Albany and soon after accepting such employment began to again look for employment in the Buffalo area. However, this merely reinforces petitioner's personal desire to live in Buffalo. By the beginning of 1972, petitioner had been working in his appointment as a hearing examiner for over a year and a half and all indications were that he would work in this position as long as he chose *255 to do so. The preference of petitioner for Buffalo as a place to work over Albany does not change the fact that petitioner did have employment in Albany, New York which was not temporary and the maintaining of any residence away from Albany was for personal and not for business reasons insofar as petitioner's employment as a hearing examiner was concerned. We therefore sustain respondent's disallowance of petitioner's claimed deduction for travel expenses between Buffalo and Albany and living expenses in Albany, New York as a business expense in connection with his business of being a hearing examiner. The problem with what expenses, if any, petitioner is entitled to deduct in connection with any work he may have done on the Dummond bankruptcy case and the DeFlumer case in Buffalo, New York is more difficult of solution. From the record we conclude that most of petitioner's trips returning to Buffalo were motivated primarily by a desire to return to the place of residence of his wife and for personal visits with his family and friends in Buffalo. Also, in our view the only necessity for petitioner's returning to Buffalo in connection with the DeFlumer case would have been one *256 time in order to transport such files as he considered necessary to Albany. Since Mr. DeFlumer's files were lost in 1971, petitioner has made no showing of any necessity to return to Buffalo in 1972 in connection with locating papers for the new attorney for Mr. DeFlumer. It likewise appears that most of the work petitioner did in connection with the Dummond bankruptcy matter could as well have been done in Albany as Buffalo had petitioner not chosen to travel to Buffalo for personal reasons and therefore to do this work while there. However, apparently since petitioner was co-counsel his presence would be needed in Buffalo in connection with preparation of tax returns for the bankrupt estate and filing of Federal returns and the conference with the Judge of the bankruptcy court in connection with the closing of the matter. Even though petitioner listed certain other conferences, there is no indication of why these short conferences could not have been handled by telephone. While there is some doubt whether petitioner's return to Buffalo from Albany on March 14 and on May 26 was primarily motivated by the necessity for his work on the Dummond case as compared to personal reasons, *257 in our view there is sufficient evidence to allow petitioner the cost of his travel to Buffalo on these two occasions, insofar as those costs are properly established by the record. The record supports petitioner's expenditures on each of these occasions of airline fares of $28 from Buffalo to Albany. Petitioner's testimony is that when he purchased an airline ticket one way he returned to Albany by train. The record shows that during 1972 train fare from Buffalo to Albany was $15, but there is nothing in this record to show the expenditures made by petitioner for cab fares and parking fees in connection with his trips to Buffalo. Nor is there any evidence to support petitioner's claimed cost of living expenses on theses trips while in Buffalo. Therefore, petitioner has totally failed to meet the requirements of section 274 in connection with these two trips except to the extent of $43 air and train fares on each occasion, or a total of $86. Petitioner has failed to show that any of his other trips to Buffalo were primarily connected with his trade or business of being a lawyer or were connected with a transaction entered into for profit. While we agree with petitioner that *258 the mere fact that he was an assigned attorney in the DeFlumer case, and therefore was not and did not expect to be paid for his work, would not cause work in that case not to be a part of his trade or business of being a lawyer, we, nevertheless agree with respondent that petitioner has totally failed to show that any of the trips he made to Buffalo in 1972 were primarily for work in connection with the DeFlumer case or were necessary for him to obtain the papers needed by the attorney appointed by the court to replace him in that case. We do, however, consider petitioner's trip to Syracuse, New York for an interview in connection with receiving an appointment for work as a court administrator to be an amount expended in seeking new employment in petitioner's present trade or business. In our view, petitioner's trade or business was being a lawyer, whether it was a lawyer in private practice, a lawyer employed as a hearing examiner by the State of New York or a lawyer employed as a court administrator. Therefore, in our view the $23 air fare spent by petitioner to fly from Buffalo to Syracuse, New York for an interview on October 9 seeking a position as a lawyer to act as a court *259 administrator is a deductible business expense of seeking new employment which was not secured. Cremona v. Commissioner,58 T.C. 219 (1972); Primuth v. Commissioner,54 T.C. 374 (1970). There has been no showing in accordance with the requirements of section 274 of any deductible business expense in connection with petitioner's travel to Syracuse other than the $23 air fare which we hold to be deductible. There has been no showing in accordance with the requirements of section 274 of any deductible business expenses in connection with petitioner's travel to Washington, D.C. to seek a position as a Federal hearing examiner other than the $67 respondent concedes to be deductible. The other business expenses claimed by petitioner to be deductible are for maintaining a "home office" in both Albany and Buffalo. In our view petitioner has totally failed to show that any portion of his payment for the room he had in Albany was for a portion of his residence which constituted a place of business. Apparently petitioner kept a desk in this room and did occasionally do some work sorting files in the DeFlumer case in his room. What other work he did in *260 this room, if any, was either in connection with his work as a hearing examiner for the State of New York or personal in nature. Petitioner was supplied an office in Albany in which to do his work as a hearing examiner for the State of New York and has totally failed to show any necessity for using his room in Albany for such work. See Sharon v. Commissioner,66 T.C. 515, 522-525 (1976); Meehan v. Commissioner,66 T.C. 794, 807-808 (1976). Petitioner has totally failed to show the amount of time he spent working on any of the DeFlumer case papers in his Albany room. Apparently what time he spent was relatively small and therefore would be insufficient to justify an allocation of any portion of the rent he paid for that room as a deductible expense. The situation with respect to the room in the residence on Arundel Road in which petitioner kept his law books and his files is different. Certainly an individual who has been engaged in the private practice of law is obligated to maintain files in his active cases.Clearly, in order to ultimately obtain his fee for his work in connection with the Dummond bankruptcy proceeding petitioner needed to *261 maintain his files in this case. In our view petitioner was also obligated to maintain his files in connection with the DeFlumer case as long as that case was active. While petitioner might have rented some storage space for these files, we do not consider the fact that he opted instead to bring them to one of the rooms in his home which was used for the storage of and working on those files to be an unreasonable procedure under the circumstances. We therefore conclude that petitioner is entitled to a deduction as an expense of winding up his legal practice and collecting his final fee, which in our view is clearly either a business expense or an expense in connection with the production of income, to a pro rata part of the gas and electric bill paid on the Arundel Road house in Buffalo, New York. The amount of these bills has been stipulated and on the basis of the evidence we conclude that one-fifth of the amount of these two bills is a proper allocation to the portion of the Arundel Road house in Buffalo used by petitioner during 1972 in connection with the windup of his law business. Petitioner is also entitled to deduct one-fifth of the reasonable depreciation on the Arundel *262 Road house. Petitioner testified that one-fifth of the yearly depreciation on this house was $190 and offered a schedule showing the method by which he computed this depreciation. Respondent raised no objection to the amount computed by petitioner to be the depreciation applicable to his office, but merely objected to its deductibility.We therefore conclude that in addition to one-fifth of the agreed amount of the gas and electric bills petitioner is entitled to deduct $190 as depreciation. Petitioner has shown that he paid $81 as insurance on the Arundel Road house, and he is therefore entitled to deduct one-fifth of this amount as properly allocable to the portion of the Arundel Road house in Buffalo used in 1972 in connection with the winding up of his law practice there. We agree, however, with respondent that petitioner has totally failed to show that the major portion of his telephone bill or the long distance calls he made in 1972 were a necessary expense of his business. In our view, petitioner has shown that the $32.37 which he spent for the first three months of 1972 to maintain the telephone for those three months which had been the number at his office when he was *263 engaged in the active practice of law was a reasonable business expense and that the $54 which he paid for the answering service on this telephone in 1972 was a reasonable business expense. The record does not show what portion, if any, of the $103.52 that petitioner paid for monthly telephone service at the Arundel Road house should be allocated to the business use of his telephone. The only information shown with respect to the payment of $18.88 for long distance calls is the cities to which the calls were made. The date of the calls is not shown. However, the record does show that petitioner made some business use of the telephone at the Arundel Road house. Since deductibility of an amount for telephone expense is not dependent on the same precise substantiation that section 274 requires for travel expenses to be deductible, we have determined on the basis of the evidence as a whole that although the telephone in the Arundel Road house was maintained primarily for personal reasons, the extension on this telephone in the room used for an office was primarily for business reasons. We also conclude that the record as a whole is sufficient to show that the long distance calls to *264 Washington, D.C. and Syracuse, New York were in connection with petitioner's attempt to obtain new employment. The total amount of the calls petitioner made to Washington, D.C. and Syracuse, New York is $9.34, which we hold to be deductible. On the basis of the record, we estimate the cost of maintaining the extension telephone in the office room for the entire year 1972 to be $21 and therefore hold this portion of the monthly service charge for the telephone at the Arundel Road house to be deductible. If, when a recomputation under Rule 155 of petitioners' taxable income and tax for the year 1972 is made petitioners would receive a benefit from the application of income averaging, the parties may make the income averaging computation from the figures shown on petitioners' tax returns for the years 1968, 1969, 1970 and 1971 which were received in evidence as joint exhibits of the parties and include the result of this computation in their recomputation under Rule 155. Decision will be entered under Rule 155. Footnotes
1. These telephone calls consisted of the following items: $2.12
Rochester, New York
1.01
Albany, New York
3.98
Olean, New York
2.15
Washington, D.C.
1.65
Gowanda, New York
4.65
Washington, D.C.
.78
Albany, New York
2.54
Syracuse, New York
During 1972 petitioner paid a total of $249.19 to the Iroquois Gas Company for service at the Arundel Road house and paid a total of $124.92 to the Niagara Mohawk Power Company for electrical service at that house. Petitioners paid $81 for insurance on the Arundel Road house. The 16x26 foot room at the Arundel Road house was approximately one-fifth of the floor space of that house. This room was not used by Mrs. Leisner. She had a desk in the kitchen of the Arundel Road house which she used in connection with any school work that she did at home.In 1972 Mrs. Leisner rarely went into the large room where petitioner's law books, files and office equipment were located except to open windows or do some cleaning, or occasionally to assist petitioner in searching for papers in connection with the DeFlumer case. During 1972 petitioner rented a room in Albany, New York for the entire year at a total expenditure of $844. During 1972 petitioner personally purchased airline tickets at a total cost of $913.34. The following schedule shows the date of purchase of these tickets, the cost and the points of departure and arrival: Date of Issue of Ticket
Airlines
Amount
Destination A = Albany B = Buffalo
NY = New York City
S = Syracuse W = Washington, D.C.
*↩
1/1/72
Mohawk
$36.67
A-B Round trip
1/21/72
Mohawk
30.00
B-A One way
2/5/72
Mohawk
36.67
A-B Round trip
3/5/72
American
28.00
B-A One way
3/27/72
American
28.00
B-A One way
4/3/72
Alleghany
56.00
A-B Round trip
4/4/72
American
28.00
B-A One way
5/15/72
Alleghany
28.00
B-A One way
5/19/72
Alleghany
28.00
B-A One way
6/12/72
Alleghany
28.00
B-A One way
7/5/72
Alleghany
28.00
B-A One way
7/17/72
Alleghany
28.00
B-A One way
7/20/72
Alleghany
36.00
A-W Round trip
7/21/72
United
31.00
W-B One way
7/31/72
Alleghany
28.00
B-A One way
8/3/72
American
28.00
A-B One way
8/6/72
Alleghany
28.00
B-A One way
8/20/72
Alleghany
28.00
B-A One way
8/23/72
Alleghany
28.00
A-B One way
8/31/72
American
28.00
A-B One way
9/5/72
Alleghany
28.00
B-A One way
9/24/72
Alleghany
28.00
B-A One way
10/1/72
Alleghany
44.00
B-A Round trip
10/9/72
Alleghany
23.00
B-S One way
10/24/72
Alleghany
28.00
B-A One way
11/7/72
American
28.00
B-A One way
11/15/72
American
32.00
NY-B One way
11/19/72
Alleghany
56.00
B-A Round trip
11/27/72
American
28.00
B-A One way
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩