GEORGE MONTGOMERY AND J. W. MONTGOMERY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4072-73.    Filed May 7, 1975.

*Richard A. Young,* for the petitioners.
*Chauncey W. Tuttle, Jr.,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency in the petitioners' Federal income tax for 1971 of $596.86. The issues to be decided are: (1) Whether the petitioner George Montgomery was "away from home" within the meaning of section 162(a)(2) of the Internal Revenue Code of 1954[1] while attending legislative sessions in Lansing, Mich., and (2) whether

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect for the year at issue, unless otherwise indicated.

the petitioners have established that they are entitled to deduct an amount in excess of the home office expense allowed by the Commissioner.

Some of the facts have been stipulated, and those facts are so found.

The petitioners, George and J. W. Montgomery, husband and wife, had their legal address in Detroit, Mich., at the time of the filing of their petition. They filed their joint Federal income tax return for 1971 with the District Director of Internal Revenue, Detroit, Mich. Mr. Montgomery will sometimes be referred to as the petitioner.

Mr. Montgomery was a member of the Michigan House of Representatives (House) representing a district in the City of Detroit. He was a House majority whip, chairman of the Committee on Taxation, and a member of the education and labor committees. Being a legislator was his sole occupation in 1971. During 1971, he was serving his eighth 2-year term as a representative.

The petitioner's principal duties as a legislator consisted of attending House sessions and committee meetings. The House sessions were always held in Lansing. The committee meetings were normally held there but were infrequently held elsewhere. The petitioner's duties as a legislator also required him to meet with various groups of his constituents in Detroit to discuss their views concerning legislation. Such groups included the Detroit Board of Education and the Planned Parenthood Association.

The House began its 1971 session on January 13 and ended on December 30. During 1971, it was in session for 155 days, of which the petitioner attended 151.

In a typical week, when the House was in session, the petitioner drove the 85 miles from his residence in Detroit to Lansing on Monday afternoon. From Monday evening until Friday afternoon, he attended legislative sessions and committee meetings, returning to Detroit later on Friday. During 1971, he met with various groups of constituents in Detroit on 75 days on weekends. He twice made out-of-State trips for a total of 9 days on legislative business when the House was in recess. He was in Florida for the month of January for personal reasons.

While in Detroit, the petitioner resided in the house which he owned there. The residence was normally unoccupied when the petitioner was away, since Mrs. Montgomery lived in Florida for health reasons and made only occasional visits to Detroit. When in Lansing, he stayed at the Olds Plaza Hotel and ate at various restaurants. In 1971, he spent $3,775 for meals, lodging, and incidental living expenses in Lansing. The House reimbursed him for $2,695 of these expenses. The petitioner was also reimbursed for his out-of-State trips and mileage between Detroit and Lansing each week, but these amounts were not challenged by the Commissioner.

For 1971, the petitioner filed a City of Detroit income tax return. He paid a tax based on the 2-percent resident rate—the nonresident rate is 1 percent. For that year, he also filed a City of Lansing income tax return paying the ½-percent nonresident rate—the resident rate is 1 percent.

The petitioner's house in Detroit, consisting of five rooms, was one-half of a duplex. It was purchased in 1947 for $11,000 including improvements. It had a useful life of 40 years. The petitioner used parts of two rooms constituting no more than one-fourth of the house as an office for legislative work. All of the office furniture and equipment were fully depreciated. Repairs costing $300 were made on the house in 1971, and utilities and insurance for it cost $480 for that year.

The petitioner claimed an employee business expense of $3,757[2] in 1971 for meals and lodging expenses incurred in Lansing and deducted that amount to the extent it exceeded his reimbursements. He also deducted $450 for his home office expenses. The Commissioner disallowed the expenses incurred in Lansing, but allowed $2,000 for living expenses incurred in Detroit. He also determined that the petitioner was not entitled to deduct more than $240 for home office expenses.

OPINION

We must first decide whether the petitioner is entitled to deduct the living expenses which he incurred during 1971 in Lansing, Mich., while performing his duties as a legislator. Personal living expenses are usually nondeductible. Sec. 262.

---

[2] This is less than his actual expenses incurred in Lansing. The difference is apparently due to a mathematical error.

However, section 162(a)(2) [3] allows a taxpayer to deduct certain living expenses if they are traveling expenses paid or incurred "while away from home in the pursuit of a trade or business." There is no dispute over the amount of the traveling expenses incurred by the petitioner while in Lansing; thus, the deductibility of such expenses turns solely on the question of whether he has met the legal requirements established by section 162(a)(2).

In *Commissioner v. Flowers*, 326 U.S. 465, 470 (1946), the Supreme Court stated the three statutory requirements for a traveling expense deduction:

(1) The expense must be a reasonable and necessary traveling expense * * *.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

In this case, the outcome depends upon whether the petitioner was away from home while incurring the expenses in Lansing.

A situation analogous to this case first came before this Court almost 40 years ago. *George W. Lindsay*, 34 B.T.A. 840 (1936). Mr. Lindsay was a Member of the Congress of the United States, representing a district in Brooklyn. While in Washington attending sessions of the Congress and performing his other legislative duties, he stayed at a hotel and sought to deduct the cost of his meals and lodging while in Washington. This Court found that most of Mr. Lindsay's duties as a Congressman had to be performed in Washington, that Washington was his principal place of business, and that therefore, he was not away from home while in Washington.

In 1946, legislation was proposed specifically to reverse our holding in *Lindsay* as it applied to Members of Congress. S. 2177, 79th Cong., 2d Sess. 79-80 (May 31, 1946). However, Congress did not adopt the proposal at that time; instead, it provided its members with a tax-free living expense allowance. Sec. 601(b), Legislative Reorganization Act of 1946, ch. 753, 60 Stat. 812,

---

[3] (a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
* * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *

850. Later, Congress passed legislation which provided that the place of residence of a Member of Congress in his State or district was his home for taxable years beginning after December 31, 1952; but the allowable deduction for living expenses was limited to $3,000. Act of July 9, 1952, ch. 598, 66 Stat. 464, 467; Act of Aug. 1, 1953, ch. 304, 67 Stat. 318, 322; sec. 162(a). Although Congress has legislatively altered the definition of "home" for its members, it placed a limit on the deduction allowed to its members, and it did not alter our holding in *Lindsay* as to all other persons.

This Court has consistently held that a taxpayer should be expected to make his home in the vicinity of his permanent business or employment and that only the expenses of traveling from a home so situated are deductible as a business expense under section 162(a)(2). If for personal reasons he fails to move his home to the vicinity of his permanent business or employment, his expenses of traveling from the home are incurred for personal, not business, reasons and are not deductible. See *Ronald D. Kroll,* 49 T.C. 557 (1968); *Howe A. Stidger,* 40 T.C. 896 (1963), revd. 355 F.2d 294 (9th Cir. 1965), revd. 386 U.S. 287 (1967); *Leo M. Verner,* 39 T.C. 749 (1963); *Mort L. Bixler,* 5 B.T.A. 1181 (1927).

The view of this Court has also been followed by other courts. In *Markey v. Commissioner,* 490 F.2d 1249 (6th Cir. 1974), revg. a Memorandum Opinion of this Court, the taxpayer had two jobs which were located a considerable distance apart. He worked 5 days per week at the job in Michigan, returning on the weekend to the other job in Ohio, where he maintained his personal residence. The taxpayer argued that living expenses incurred at the Michigan location were deductible since he was away from home while there. However, the court held at 490 F.2d 1255 that:

when a taxpayer has two places of business or employment at a considerable distance from one another, his designation of one as his abode, if different from the place where he spends more of his time, engages in greater business activity, and derives a greater proportion of his income, is not dispositive of the question which location is his home for the purpose of deducting traveling expenses. * * *

Thus, the court rejected the taxpayer's subjective concept of "home" and applied an objective test. It held that since most of his work was performed at the Michigan job, he was not away from home while there.

In *Barnhill v. Commissioner,* 148 F.2d 913 (4th Cir. 1945), affg. a Memorandum Opinion of this Court, the taxpayers were justices of the Supreme Court of North Carolina who traveled to the State capital in Raleigh twice each year for court sessions, although they continued to maintain their personal residences in their native areas. Since all their judicial functions were performed in Raleigh, living expenses incurred there were not deductible business expenses. See also *Wills v. Commissioner,* 411 F.2d 537 (9th Cir. 1969), affg. 48 T.C. 308 (1967).

Under out interpretation of "home" as used in section 162(a)(2), and that followed by the courts in *Markey* and *Barnhill,* the petitioner was not away from home while he was in Lansing. The Commissioner has conceded that the petitioner had some business-related duties in both Lansing and Detroit, but his principal duties were in Lansing. The petitioner has not seriously contended that Detroit was his principal place of business, and the evidence makes it very clear that such was not the case. Lansing was where his official duties were performed. He spent over twice as much time there on business as he did in Detroit. The petitioner was paid to be a legislator, and those duties were primarily performed in Lansing. This case is not distinguishable from *Lindsay,* and when the objective test adopted by the Sixth Circuit in *Markey* is applied to the facts, the result is clear—the petitioner was not away from home within the meaning of section 162(a)(2) while he was working in Lansing.

In recognizing that the petitioner had duties to be carried on in Detroit, the Commissioner has allowed him to deduct his transportation expenses for 37 round trips between Detroit and Lansing and allowed him $2,000 for living expenses incurred in Detroit. These allowances are consistent with our conclusion that Lansing was the petitioner's principal place of employment, but that he did have business duties to perform in Detroit. See *S. M. R. O'Hara,* 6 T.C. 841 (1946). The petitioner has not claimed any greater allowance to cover such expenses.

The petitioner argues that the decisions of the Second Circuit in *Rosenspan v. United States,* 438 F.2d 905 (2d Cir. 1971), cert. denied 404 U.S. 864 (1971), and *Six v. United States,* 450 F.2d 66 (2d Cir. 1971), require us to adopt a different definition of "home" as used in section 162(a)(2). We believe that our conclusion in this case is compatible with the results reached in those cases. *Rosenspan* involved a traveling salesman who had no

actual residence. He claimed his employer's headquarters was his "home" so that all his traveling expenses while on the road were "away from home." The court found that " 'home' means 'home' and Rosenspan had none." 438 F.2d at 912. However, the same result would have been reached with our definition of "home." See *Kenneth H. Hicks*, 47 T.C. 71 (1966). Mr. Rosenspan's principal place of business was wherever he happened to be. See *Brandl v. Commissioner*, 513 F.2d 697 (1975), affg. a Memorandum Opinion of this Court, in which the Sixth Circuit approved of the *Rosenspan* decision, recognized that the traveling salesman presents a unique situation, and also found nothing inconsistent between that result and its decision in *Markey*.

In *Six*, entertainer Ethel Merman sought to deduct her living expenses in New York City where she was working, because her personal residence was in Colorado. While the court did reject the principal place of business test for determining "home," the court remanded the case to the trial court, saying:

The key inquiry which must be made then is whether, under all the circumstances, Miss Merman's residence in New York during 1959 may be viewed as temporary in nature or as sufficiently indefinite to expect that a reasonable person in her position would pull up stakes and make her permanent residence in New York. * * * [*Six v. United States,* 450 F.2d at 69.]

The same factors would be considered under our definition of "home" in determining whether her employment in New York was merely temporary. See *Truman C. Tucker*, 55 T.C. 783 (1971); *Walter P. Stricker*, 54 T.C. 355 (1970), affd. 438 F.2d 1216 (6th Cir. 1971); *Ronald D. Kroll, supra.* Thus, while the Second Circuit apparently rejected our construction of "home," similar factors were used to reach similar results.

The petitioner also argues that Detroit was his home because he was required to maintain his domicile and actually reside there as a condition of his employment. Article IV, section 7, of the Michigan Constitution (1963) provides:

Sec. 7. Each senator and representative must be a citizen of the United States, at least 21 years of age, and an elector of the district he represents. The removal of his domicile from the district shall be deemed a vacation of the office. * * *

*United States v. Le Blanc,* 278 F. 2d 571 (5th Cir. 1960), involved a justice of the Supreme Court of Louisiana who had to go to the State capital to perform his judicial duties, but who was also required to continue to maintain his residence in his home

district. The Fifth Circuit relied upon the requirement of actual residence in the home district and concluded that the justice was away from home while performing his judicial duties in the State capital. See also *Moss v. United States,* 145 F. Supp. 10 (W.D.S.C. 1956); *Emmert v. United States,* 146 F. Supp. 322 (S.D.Ind. 1955). However, the *Le Blanc* decision appears to be factually distinguishable from the case before us. Although the petitioner asserted that he was required to continue actually to reside in Detroit, he provided no support for that assertion. We recognize that because of the duties of his office, he had to spend part of his time in Lansing and part of his time in Detroit; yet, to determine which place should be treated as his home for purposes of section 162(a)(2), we must decide which was his principal place of business, and under the objective test, that was Lansing.

Furthermore, since this case arose in the Sixth Circuit, we must be guided by the law of that circuit. See *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). Consequently, even if there is any doubt as to the applicability of the decisions of the Second and Fifth Circuits in this case, it is clear that our decision must be governed by the holding in *Markey* that an objective test is to be applied in determining the taxpayer's home for purposes of section 162(a)(2), and that under such test, he was not away from home while in Lansing.

Finally, the petitioner argues that his "home" is in Detroit because under the income tax laws of the Cities of Lansing and Detroit, he was treated as a resident of Detroit. Such fact is clearly irrelevant to our determination of his "home" for purposes of section 162(a)(2). See *Burnet v. Harmel,* 287 U.S. 103, 110 (1932).

The second issue we must decide is whether the petitioner has shown that he is entitled to deduct an amount in excess of $240 for his office in his home. He apparently based his claimed deduction on the fair rental value of the space used as an office. However, since the petitioner owned his own home, he actually paid no rent.

Deductions are matters of legislative grace; taxpayers have no inherent right to them. *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593 (1943); *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 (1934). The taxpayer must be able to point to some particular statute to justify his deduction and

establish that he comes within its terms. *Deputy v. DuPont*, 308 U.S. 488, 493 (1940); *White v. United States*, 305 U.S. 281 (1938).

In some situations, home office expenses may be deductible as business expenses. See *Newi v. Commissioner*, 432 F. 2d 998 (2d Cir. 1970), affg. a Memorandum Opinion of this Court; *Best Universal Lock Co.*, 45 T.C. 1 (1965); *Clarence Peiss*, 40 T.C. 78 (1963). Section 162(a) allows a deduction for trade or business expenses paid or incurred during the taxable year. Since the petitioner did not pay the fair rental value of his office, such value cannot bè the basis for a deduction. He is limited to a depreciation deduction for the portion of his house used for the office plus a portion of his maintenance expenses. He has failed to show that he is entitled to deduct an amount in excess of that allowed by the Commissioner.

*Decision will be entered for the respondent.*