BERTON N. CROSS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cross v. Commissioner
Docket No. 1057-76.
United States Tax Court
T.C. Memo 1979-59; 1979 Tax Ct. Memo LEXIS 466; 38 T.C.M. (CCH) 234; T.C.M. (RIA) 79059; February 21, 1979, Filed *466 Petitioner was a construction worker who resided in Minneapolis and whose general employment was in the Minneapolis area. After obtaining a position on a construction site in Illinois which lasted 14 to 15 months, petitioner rented out his apartment which he owned in fee. While visiting the Minneapolis area or when working on construction sites in the area after completing work in Illinois, petitioner stayed in motels and ate out in restaurants. Held, petitioner did not maintain a permanent place of residence in the Minneapolis area and expenses incurred in Illinois were not incurred while away from home. Robert D. Hunter and Douglas J. Peterson, for the petitioner. Rick K. Budd, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's income tax and additions thereto pursuant to section 6651(a) [1] as follows: Addition [2] Year
Deficiency
to Tax
1971
$ 1,161.75
$ 178.69
1972
993.13
*468 Petitioner alleged an overpayment of tax and seeks refunds in the amounts of $ 438.50 and $ 909.16 for the taxable years 1971 and 1972, respectively. [3]
After concessions by petitioner, the only issues for our decision are: (1) Whether petitioner is entitled to a deduction under section 162(a)(2) for travel expenses incurred *469 while away from home; and (2) Whether petitioner has substantiated these alleged expenses pursuant to section 274(d). FINDINGS OF FACT Some of the facts have been stipulated. The findings of fact and exhibits attached thereto are incorporated herein by this reference. Petitioner, Berton N. Cross, filed individual income tax returns for the taxable years 1971 and 1972 with the Internal Revenue Service Center, Ogden, Utah. At the time his petition herein was filed, petitioner resided in Fridley, Minnesota, a suburb of Minneapolis. Petitioner has been a boilermaker on construction projects since 1967. During that year, petitioner joined Local Lodge No. 647 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (hereafter sometimes referred to as either the Union or Local 647). The Union has jurisdiction over Minnesota, North Dakota, South Dakota and a small part of Wisconsin but the union hall is located in Minneapolis. Most of petitioner's jobs were located in Minnesota and were temporary in nature. Local 647 used a referral list for sending its members to construction sites.A contractor would contact the Union to request *470 workers and the Union would then dispatch the workers to the site for possible employment. The Union selected its members off a referral list on the basis of who had been on the list the longest. A member was not required to accept a job offered by a contractor, but his name would go to the bottom of the referral list if he refused employment. Moreover, once a member accepted a job on a project the Union would not permit him to switch jobs to another project. Because Union Local No. 60, which has jurisdiction in the Pekin, Illinois area, had more job offers available than its members could fill, it informed Local 647 that it would refer Local 647 members to available jobs in the Pekin area. About January 1, 1971, petitioner learned of work in Pekin, Illinois, through Local 647's referral system and left Minneapolis to report to Local 60's union hall. Local 60 then dispatched petitioner to a large construction project being built for Commonwealth Edison Company. On or about January 5, 1971, petitioner was hired as a boilermaker. Petitioner remained on the project until he was laid off on March 15, 1972. The first week petitioner was at the Pekin project he stayed in a motel, *471 but during the remaining time he lived at a rooming house. Petitioner received no per diem housing allowance or subsistence pay from the contractor. Throughout the entire time petitioner worked on the project he was constantly given new positions as he completed particular job assignments. Originally, petitioner was supposed to start work as a heliarc welder but was placed on a regular welding job instead. He also worked on boilers, a precipitator, and hoppers. At the time petitioner was given each assignment, he was not informed that he would be given additional work at its completion. When petitioner was finally laid off in March 1972, other boilermakers working on the project retained their positions. In about 1963, petitioner built a three-unit apartment building in Fridley into which he and his son moved in 1964 after petitioner's home was damaged in a storm. Petitioner and his son resided in the building (in unit #1) for several years. However, they later rented unit #1 to other families and the unit was rented (without a lease) throughout 1971 and 1972. Unit #1 was leased as a furnished apartment because it contained petitioner's furniture and some other possessions, *472 including some items of clothing left in a closet. Petitioner also received his mail at this address. Although petitioner required leases for the other two units he rented, he did not desire a lease for unit #1 because he hoped to obtain a permanent position with a company as a boilermaker and repairman in Minneapolis, at which time he would once again move into the apartment. Through the date of the trial of this case, petitioner has been unable to obtain a permanent position in the Minneapolis area and has continued to lease unit #1. After March 1972, most of petitioner's work was done within the Minneapolis-St. Paul area but he had no employment other than when he was employed as a boilermaker. During 1971 and through March 1972, petitioner made numerous trips to Minneapolis and always tried to visit the apartment building at least once every month. [4] While in the Minneapolis-St. Paul area during 1971 and 1972, either for short periods of time or when working on construction project for longer periods, petitioner resided in motels and ate his meals in restaurants. However, on one or two occasions during 1971, petitioner stayed in unit #1 with the tenant living there and *473 at other times was a guest at meals. During 1971 and 1972, petitioner had a Minnesota drivers' license and his automobile was registered in Minnesota. In addition, petitioner was registered to vote in Minneapolis. During 1971 and 1972, petitioner's son was in the Army. Petitioner presented into evidence two pages of a loose-leaf notebook on which alleged expenditures for January and February 1972 were recorded. Records similar to these were maintained for 1971 but were lost; however, the records had been given to petitioner's return preparer when the 1971 return was being filled out. The records for 1972 were never given to the preparer.
OPINION In dispute are deductions claimed by petitioner for meals and lodging allegedly incurred in Pekin during 1971 and 1972 *474 and petitioner's expenses incurred in traveling from Pekin to Minneapolis after he was laid off from the Pekin project. Petitioner claims that Fridley is his "tax home" and that he is, therefore, entitled to a deduction under section 162(a)(2) for traveling expenses (including his meals and lodging) as away from home expenses incurred in the pursuit of a trade or business. Respondent contends that petitioner's employment at the Pekin project was indefinite so that Pekin became petitioner's tax home, or in the alternative, that petitioner's contacts with Fridley were so minimal that petitioner "carried his tax home on his back." Rambo v. Commissioner,69 T.C. 920 (1978). Finally, respondent argues that even if all the requirements of section 162(a)(2) are met, petitioner has failed to meet the substantiation requirements of section 274(d). This Court has consistently held that a taxpayer's "home" for purposes of section 162(a)(2) is his principal place of business. Coombs v. Commissioner,67 T.C. 426, 478 (1976), on appeal to the Ninth Circuit Feb. 14, 1977; Michaels v. Commissioner,53 T.C. 269 (1969). Since the tax home of *475 a construction worker is ordinarily at his principal or regular post of duty which typically is the city or general area in which he customarily works, Schurer v. Commissioner,3 T.C. 544 (1944), we agree with petitioner that prior to the time he went to Pekin his tax home was Fridley. Nor does respondent contend otherwise. Respondent also agrees that a taxpayer may continue to have his "home" at his regular place of employment even if he accepts employment at another location if it appears probable that the taxpayer's employment outside the area of his regular abode will be for a "temporary" or "short" period of time. If so, then his travel expenses are held to be deductible; conversely, if the prospects are that his work will continue for an "indefinite" or "intermediate" or "substantially long" period, then no deduction is allowed. Cockrell v. Commissioner,321 F.2d 504, 507 (8th Cir. 1963); Bochner v. Commissioner,67 T.C. 824, 827 (1977); Montgomery v. Commissioner,64 T.C. 175 (1975), affd. Montgomery v. Commissioner,64 T.C. 175 (1975), affd. 532 F.2d 1088 (6th Cir. 1976); *476 Dean v. Commissioner,54 T.C. 663 (1970). In addition, if the employment while away from home, even if temporary at its inception, later becomes substantial, indefinite, or indeterminate in duration, the situs of such employment would become petitioner's tax home. Kroll v. Commissioner,49 T.C. 557, 562 (1968); Verner v. Commissioner,39 T.C. 749 (1963); Garlock v. Commissioner, 34 T.C. 611, 615 (1960). The first question we must answer is whether petitioner maintained his tax home in Fridley regardless of the nature of his position in Pekin. Cf. Brandl v. Commissioner,513 F.2d 697 (6th Cir. 1975), affg. a Memorandum Opinion of this Court; Rosenspan v. Commissioner,438 F.2d 905 (2d Cir. 1971); James v. United States,308 F.2d 204 (9th Cir. 1962); Fisher v. Commissioner,23 T.C. 218 (1954), affd. 230 F.2d 79 (7th Cir. 1956). We are aware that a taxpayer who is temporarily away from his home might desire to rent it during his absence and that renting one's home while accepting employment elsewhere may be consistent with a finding *477 that a taxpayer has maintained his original "tax home." Michaels v. Commissioner,supra;Dowd v. Commissioner,37 T.C. 399 (1961). Cf. Jones v. Commissioner,54 T.C. 734 (1970), affd. 444 F.2d 508 (5th Cir. 1971). In this case, however, petitioner planned to rent unit #1 not only during his employment at Pekin but until he obtained a permanent position in the Fridley area.Thus, we believe it significant that when petitioner returned to Fridley in March 1972 and was employed in construction work in the Minneapolis area for the remainder of 1972, he stayed in motels and ate his meals in restaurants (except for once or twice when he stayed in his apartment with his tenant). It is this fact that distinguishes the present case from Michaels and Dowd. In those cases, the taxpayers expected to return to their homes which they had rented out during their expected temporary employment elsewhere. Here, petitioner did not return to his apartment after completion of his job in Pekin. Therefore, although petitioner probably maintained his domicile in Fridley and always desired to live there, this is insufficient to *478 justify a finding for petitioner, especially in view of his difficulty in obtaining a permanent position there. See Fisher v. Commissioner,supra at 225. It does not appear, then, that petitioner has incurred those additional and duplicative living expenses of maintaining two places of abode which is the rationale for section 162(a)(2). Put another way, petitioner did not maintain a permanent place of residence in Fridley to which he intended to return and in which he incurred substantial living expenses. His son was in the Army during 1971 and 1972 and he had no family obligations requiring him to maintain the apartment for himself. We are aware that there are factors weighing in petitioner's favor; for example, he utilized his local union to obtain work, he was not regularly or continuously employed by any single concern, most of his jobs from 1967 through 1972 were in Minnesota, and jobs taken outside Minnesota in general, and in Pekin in particular, were for business rather than personal reasons. Nonetheless, on balance we do not believe petitioner has shown his tax home was Fridley at the time he worked in Pekin. Because of this holding, we need not *479 reach the other contentions raised by respondent. There remains the issue of whether $ 48 for mileage expense incurred by petitioner in 1972 to return to Fridley after he was laid off the Pekin job is deductible.Petitioner maintains that since he was away from home while in Pekin, the expense was simply an away from home travel cost. We have held, however, that this is not the case.Respondent contends that the travel in issue here was not incurred due to petitioner's business exigencies but rather was related to petitioner's personal desire to obtain employment in the Minneapolis area. It is well settled that expenses of an employee in either seeking or securing new employment in the same line of work are deductible expenses. Cremona v. Commissioner,58 T.C. 219 (1972); Primuth v. Commissioner,54 T.C. 374 (1970). Respondent has acquiesced in both of these decisions, 1975-2 C.B. 1 (Cremona) and 1972-2 C.B. 2 (Primuth, result only). He now agrees that travel and transportation expenses incurred in seeking new employment in the same trade or business are deductible if the trip is related primarily to seeking *480 new employment. Rev. Rul. 75-120, 1975-1 C.B. 55. See also Rev. Rul. 77-16, 1977-1 C.B. 37. Although petitioner returned to Minneapolis because he desired to live there, his union hall was located in Minneapolis and his jobs were secured through and were generally located in Minnesota from 1967 on. Thus, although we held that petitioner did not maintain his "tax home" in Fridley, we believe he returned to Minneapolis primarily in order to obtain employment in his trade or business. Accordingly, we hold that such expenses were ordinary and necessary and deductible under section 162. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect for the years in issue.↩
2. The addition to tax was imposed because of petitioner's alleged failure to file his return within the time prescribed by law.Although petitioner placed the addition to tax in dispute in his petition, no evidence was introduced nor argument on brief made on this issue. We assume, therefore, that petitioner no longer disputes the addition to tax.↩
3. On March 10, 1975, in attempting to settle this case prior to the issuance of the notice of deficiency, petitioner paid respondent certain sums on the deficiencies assessed for 1971 and 1972. These payments were not taken into consideration in the notice of deficiency. Petitioner disputed the entire deficiency in his petition and claimed an overpayment of $ 438.50 for 1971 and $ 909.16 for 1972 as a result of these payments. On brief, however, petitioner claimed an overpayment of $ 1,527.06 based on payments of $ 438.50 plus $ 76.12 interest for 1971 and $ 909.68 plus $ 103.28 (apparently petitioner made a mathematical error in his computations and the correct sum of these payments would be $ 1,527.58). Respondent concedes that credit is due petitioner on the amount of the payments and states that credit will be given in the Rule 155 computation.↩
4. Respondent allowed petitioner a deduction under section 212 of $ 1440 in 1971 for transportation expenses petitioner incurred in traveling between Pekin and Fridley with respect to the management and maintenance of his apartment building. Respondent disallowed as a personal expense $ 48 in transportation expenses resulting from petitioner's final return to Fridley after his job at Pekin was terminated.↩