CONRAD HENRY HOEPPNER AND IRENE MARY HOEPPNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoeppner v. Commissioner
Docket No. 1595-91
United States Tax Court
T.C. Memo 1992-703; 1992 Tax Ct. Memo LEXIS 747; 64 T.C.M. (CCH) 1493; December 14, 1992, Filed *747 P, an engineer and long-time resident of Florida, was employed on a full-time basis from 1983 until some time in 1990 by a company in Maryland. P also carried on a consulting business, doing some of his consulting work in Florida. P's wife maintained businesses in Florida, with which P helped when he was in Florida. Held: P's home for purposes of the sec. 162(a)(2), I.R.C., deduction for travel away from home is in Maryland. For Conrad H. Hoeppner, pro se. For Respondent: Elizabeth S. Henn. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: By notice of deficiency dated November 26, 1990, respondent determined deficiencies in, and additions to, petitioners' tax liabilities for 1986, 1987, and 1988. Among the adjustments giving rise to respondent's determination of deficiencies was her disallowance of substantial deductions taken by petitioners on account of petitioner husband's claimed travel away from home in pursuit of business. A primary issue is the location of petitioner husband's home for purposes of such deductions. A resolution of that issue may obviate the resolution of additional issues. Accordingly, the Court, for reasons of judicial *748 economy, ordered a separate trial on the question of petitioners' tax home, and this proceeding commenced. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. Some of respondent's proposed findings of fact have been conceded by petitioner and, accordingly, are so found. [1] Those facts are incorporated herein by this reference. *749 Petitioners are husband and wife who, for the years in question, made a joint return of income, computed on the basis of a calendar year. Petitioners resided in Indialantic, Florida, at the time the petition in this case was filed. Hereinafter, when used in the singular, the term "petitioner" refers only to petitioner Conrad Hoeppner. Petitioner is an engineer. On July 25, 1983, he was hired for full-time employment in that capacity by AAI Corp. (AAI). He was employed on a salaried basis, in Cockeysville, Maryland (a suburb of Baltimore, Maryland). Petitioner's assignment to Maryland was indefinite, not temporary. His employment with AAI continued through April 1990. From some time in the early 1950's through the years in issue, petitioner and his wife maintained a residence in Indialantic, Florida. During the years in issue, petitioner's wife remained in Indialantic, Florida. Petitioner spent no more than the following numbers of days in Florida during the years in issue: Year
Days
1986
60
1987
78
1988
66
During those same years, petitioner spent no fewer than the following numbers of days in Maryland: Year
Days
1986
166
1987
186
1988
184
As *750 part of his job for AAI, petitioner was required to travel extensively. During the years in issue, petitioner's days of travel for AAI, and days thereof in Florida, were as follows: AAI Travel
Days in
Year
Days
Florida
1986
73
2
1987
19
4
1988
12
9
Petitioner owned a condominium in Maryland, in which he resided when he was in Maryland working for AAI during the years in issue. At all times during those years, petitioner kept at least one car in Maryland. Petitioner also worked as a paid consultant during the years in issue, for Center Engineering (1986), Paceco (1987 and 1988), and Maersk (1988). Some of his work as a consultant was performed while he was a resident in Indialantic, Florida. During the years in issue, petitioner's wife worked as a real estate broker in Indialantic, Florida. She also owned and managed a substantial number of real estate holdings in Florida. When residing in Florida, petitioner assisted his wife in those and related business endeavors, from which Mrs. Hoeppner derived income. During the years in issue, petitioner earned the following amounts from AAI and from his work as a consultant for Center Engineering, Paceco, and Maersk: *751 Year
AAI
Consulting
1986
$ 76,180
$ 18,487
1987
72,592
17,500
1988
78,515
16,000
227,287
51,987
Center Engineering, Paceco, and Maersk were the only entities from which petitioner earned consulting income during these years. Petitioner, along with his wife, reported other income for the years 1986 through 1988 on their Form 1040 joint tax returns as follows: Type of Income
1986
1987
1988
Total
Wages
$ 3,650 $ 800 $ 0    $ 4,450 [1]Interest/dividends 81,766 123,531 113,032 318,329 [2] Business income 13,415 13,003 10,593 37,011 Capital gain
54,273 8,711 12,245 75,229 IRA dist./pensions
and annuities  924 1,689 6,049 8,662 Rents/royalties
(44,912)
(2,236)
(2,270)
(49,418)
Social security
291 3,343 7,012 8,646 Total
109,407 148,841 146,661 402,909 *752 ULTIMATE FINDING OF FACT During 1986, 1987, and 1988, petitioner's tax home was located in Maryland. OPINION Petitioners have taken substantial deductions on account of petitioner's claimed travel away from home in pursuit of business. Depending on the location of petitioner's tax home, a substantial portion of such travel, if not all of it, may not have been "away from home" for tax purposes, so that the expenses of this travel would be nondeductible. See sec. 262. Accordingly, as a preliminary matter, we will determine the location of petitioner's tax home. Law
The statutory provision in issue is section 162(a)(2), which provides in pertinent part: (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * [Emphasis added.] Generally, a taxpayer's home, within the meaning of section 162(a)(2), is the area or *753 vicinity of the taxpayer's principal place of employment rather than the location of his family residence. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). A narrow exception to that rule exists where the taxpayer's employment in a particular location is temporary, as opposed to indefinite or indeterminate. Norwood v. Commissioner, 66 T.C. 467, 469 (1976); Hanna v. Commissioner, T.C. Memo. 1992-256. A place of business is considered temporary when it is expected that employment at the location will last for only a short period of time. Norwood v. Commissioner, supra at 469. In the event that a taxpayer possesses two places of business or employment separated by considerable distances, his choice of one as his tax home carries little weight. Instead, courts often apply an objective test in which they consider: (1) The length of time spent at each location; (2) the degree of activity in each place; and (3) the relative proportion of taxpayer's income derived from each place. [2]Markey v. Commissioner, 490 F.2d 1249, 1255 (6th Cir. 1974), *754 revg. T.C. Memo. 1972-154; Montgomery v. Commissioner, 64 T.C. 175, 180 (1975), affd. 532 F.2d 1088 (6th Cir. 1976); Sherman v. Commissioner, 16 T.C. 332 (1951); Sargent v. Commissioner, T.C. Memo. 1984-390. Although no single factor is dispositive, particular emphasis sometimes is placed on the amount of time spent by a taxpayer at a given location. Markey v. Commissioner, supra at 1252. In general, a taxpayer is required to establish his tax home at his major duty post so as to minimize the amount of business travel away from home that must be undertaken. Wills v. Commissioner, 411 F.2d 537, 540 (9th Cir. 1969), affg. 48 T.C. 308 (1967). *755 Analysis
Petitioners assert that petitioner's family residence in Indialantic, Florida, was his tax home from 1986 through 1988. Petitioners argue that the travel expenses petitioner incurred, including lodging and transportation, as a result of his employment with AAI in Maryland, are deductible pursuant to section 162(a)(2). Respondent asserts that those costs represent nondeductible personal expenditures, since petitioner's tax home for the years in issue was in Maryland. We agree with respondent. I. Consideration of Petitioner's Individual Circumstances
A. Petitioner's Wife's Circumstances Disregarded
Petitioners state that petitioner, in cooperation with his wife, actively participated in a wide variety of Florida-based businesses. On brief petitioner describes those business endeavors as including "consulting, lending, real estate sales, land investments, ElectroMetrics Corporation, general investments, local mortgage loans, and the management, repair and maintenance of rental housing units." Petitioners assert that this Court should consider the aggregate time spent, activities undertaken, and money earned in regard to those ventures by both petitioner *756 and his wife when determining petitioner's tax home. In making such argument, however, petitioners improperly seek to combine the business activities of petitioner's wife with petitioner's own individual circumstances. This Court has ruled that husbands and wives can have different tax homes and that each spouse should be considered separately in making a tax home determination. Foote v. Commissioner, 67 T.C. 1, 5 (1976). There is nothing in the record to indicate that Mrs. Hoeppner did not herself have her tax home in Florida. Nevertheless, no matter how strong a foundation can be laid to establish the location of Mrs. Hoeppner's tax home, that foundation will not provide underpinnings for the tax home that petitioner here is attempting to construct in Florida. B. Maryland or Florida
It is clear that, during the years in issue, petitioner had a place of employment in Maryland. In 1983, he was hired by AAI for full-time employment in Cockeysville, Maryland. His employment by AAI in Maryland was indefinite, not temporary; indeed, that employment continued until April 1990. If petitioner had possessed no other place of employment or business *757 during the years in issue, there would be no question that Maryland was petitioner's tax home for purposes of section 162(a)(2). During the years in issue, however, petitioner did engage in consulting and other business activities while a resident in Florida. We will accept arguendo, without deciding, that had petitioner not also possessed employment in Maryland during such years, Indialantic, Florida, would have qualified as petitioner's tax home for purposes of section 162(a)(2). Thus, we need only choose between Maryland and Florida to determine petitioner's tax home. In order to reach a decision, we look to the objective criteria set forth in Markey v. Commissioner, supra.In doing so, however, we will examine the facts and circumstances only to the extent that they pertain to petitioner, and will disregard the business activities of petitioner's wife. II. Application of the Markey Standard
Thus, we look solely to petitioner's circumstances in considering (1) the length of time spent at each location; (2) the degree of activity in each place; and (3) the relative proportion of petitioner's income derived from each place. Given *758 the obscurity of the factual record resulting from petitioners' failure to differentiate petitioner's circumstances from those of his wife, it is difficult to determine with any degree of accuracy the extent of activity undertaken by petitioner, and the amount of money earned by him, in Florida. Those circumstances that can be ascertained, however, do not support a finding that petitioner's tax home was in Indialantic, Florida. A. Time Spent in Each Location
Petitioners' argument is severely, if not irreparably, damaged by the facts arising from our initial inquiry into the amount of time spent by petitioner in each location. The quantitative reality is that, during the years in issue, petitioner spent well in excess of 2 days in Maryland for every 1 day spent in Florida. Our findings indicate that petitioner's days in Maryland and Florida were, at best, as follows: Year
Maryland
Florida
1986
166
60
1987
186
78
1988
184
66
Total
536
204
The ratio of total days spent in Maryland to days spent in Florida for the years in question is 2.6 to 1. B. Extent of Activity Undertaken in Each Place
When the second prong of Markey v. Commissioner, 490 F.2d 1249, 1255 (6th Cir. 1974), *759 revg. T.C. Memo. 1972-154 (degree of activity in each place), is considered, we are confronted with a factual muddle, that, while perhaps less damning than the "time spent" analysis, is nevertheless still not helpful to petitioners' case. Although the term "activity" could conceivably connote a variety of endeavors, finding no authority to the contrary, we will approach that aspect of Markey's analysis with reference to petitioner's "business activities". Lagrone v. Commissioner, T.C. Memo. 1988-451; Edwards v. Commissioner, T.C. Memo. 1987-396; Karp v. Commissioner, T.C. Memo. 1976-325. We have no doubt that, during the times petitioner was in Florida, he was engaged actively in a wide variety of family-run businesses. To judge from petitioners' descriptions, however, petitioner was a veritable whirlwind of activity, tearing through all manner of vaguely defined business projects whenever he returned to Florida. Nevertheless, petitioners furnish us with a paucity of information regarding the nature and extent of that involvement. That circumstance, combined *760 with the sheer magnitude of the time petitioner spent in Maryland, as well as his status as a full-time employee with AAI during the years in issue, requires a finding that the bulk of petitioner's business activities were undertaken in Maryland. C. Income Earned in Each Location
When the relative proportion of income derived from each place is considered, we are faced with our finding that, in the years in issue, petitioner earned $ 227,287 of salary from AAI. All of that income we view as associated with petitioner's employment in Maryland. We have also found that petitioner earned $ 51,987 of income from his consulting activities with Center Engineering, Paceco, and Maersk. The record indicates that at least some portion of those activities was performed in Florida. We are unable, however, to determine what portion was performed in Florida, or how to allocate consulting income to such Florida activities. Petitioners have provided us with no basis to determine the portion of such activities allocable to Florida or the consulting income resulting therefrom. We can ignore such defect, however, since, even if we were to allocate all of the consulting income to Florida, *761 it is of little significance (less than 25 percent) compared to the Maryland source income. Since, as discussed immediately hereafter, there is no further income that we can conclude was earned by petitioner in Florida, the consulting income, which we will assume arguendo to have been earned in Florida, is inadequate to tip the balance regarding this factor in favor of petitioners. During the years in issue, petitioners also reported other income on their joint Form 1040 tax returns as follows: Type of Income
1986
1987
1988
Total
Wages
$ 3,650 $ 800 $ 0    $ 4,450 Interest/dividends
81,766 123,531 113,032 318,329 Business income
13,415 13,003 10,593 37,011 Capital gain
54,273 8,711 12,245 75,229 IRA dist./pensions
and annuities  924 1,689 6,049 8,662 Rents/royalties
(44,912)
(2,236)
(2,270)
(49,418)
Social security
291 3,343 7,012 8,646 Total    109,407 148,841 146,661 402,909 Although those amounts represent significant sums, they do not assist us in our inquiry regarding petitioner's tax home. As we have previously discussed, only petitioner's individual income is in issue. Those amounts, derived *762 from petitioners' Forms 1040 for the years in issue, represent the combined, often indistinguishable, reports of income of petitioner and his wife. Moreover, most of the other income, such as interest, dividends, pensions, annuities, and Social Security, has not been shown to have been associated with any particular location. In fact, petitioners do not provide us with adequate evidence from which we can find that any of the other income was earned by petitioner from his activities in Florida. As a result, we find that, for the years in issue, the vast bulk of petitioner's income that we are able to connect with any location at all must be viewed as having been derived from petitioner's employment with AAI in Maryland. D. Conclusion
Petitioners are unable to muster any evidence sufficient to mitigate the inferences flowing from (1) the significant disparity between time spent by petitioner in Maryland and Florida, (2) the resulting differential in business activity undertaken in each location, and (3) the fact that most of petitioner's income, identifiable with a particular location, was earned in Maryland. Accordingly, after weighing the objective factors at our disposal, *763 we find that petitioner's major post of duty for the years in issue was in Maryland. III. Temporary vs. Permanent Employment
Petitioners seek to avoid the tax home implications of our determination by arguing that, at least at first, petitioner was a temporary rather than a permanent employee of AAI. However, we have found, as a matter of fact, that petitioner's employment with AAI was indefinite, not temporary. That finding is abundantly supported by the record. At trial, Monika Munn, supervisor of records and personnel at AAI, produced petitioner's personnel file and testified that, when hired in 1983, petitioner was considered a permanent employee, employed in the Maryland office. William H. Muth, who was employed by AAI in 1983 as senior personnel coordinator and recruiter, also testified that, when hired by AAI in 1983, petitioner was to be employed in Maryland, in a permanent position. Ms. Munn further testified that nothing in petitioner's file indicates that he requested a transfer to Florida. Moreover, petitioner's tenure with the company, lasting from 1983 through 1990, was characterized from the beginning by many of the traditional indicia of permanence. *764 For instance, in 1984, petitioner purchased a condominium in Towson, Maryland, where he kept at least one car at all times, and where he lived alone while working for AAI during the years in issue. Petitioner's purchase, for his sole use, of permanent, long-term housing does not strengthen his claim that his status is truly that of a mere temporary employee. Thus, petitioners establish no basis for the application of the temporary employee exception to the general rule that an individual's tax home is in the same location as his principal place of business. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Hanna v. Commissioner, T.C. Memo. 1992-256. IV. Estoppel
Petitioners further contend that their previous encounters with respondent (for earlier years) regarding the tax home issue should be dispositive for 1986 through 1988 as well. For petitioners' 1971 and 1974 tax years, they claim that respondent asserted deficiencies based on disallowances of all of petitioners' claimed business expenses, as well as a claimed $ 200,000 business loss. A settlement was reached, however, and approved by this Court, docket *765 No. 3247-77, in which, according to petitioners, (1) all disallowed business expenses from Florida were allowed, (2) one-half of the claimed business loss was allowed, and (3) no penalty assessments were enforced. Petitioners assert that the abandonment of the agent's business expense disallowance by respondent constituted a recognition and approval of the tax home of Indialantic, Florida. They also argue that the business conditions in issue in the years 1971 and 1974 were essentially the same as those in the present case, also involving consulting and lending activities, with multiple clients, undertaken concurrently with petitioner's Form W-2 employment, then at Cleveland Crane Corp.
Petitioners also claim that essentially the same circumstances as those existing in the instant case were present when they were audited by respondent for both the 1970 and 1980 tax years. They claim that the audits of both returns, which reported Indialantic, Florida, as petitioner's tax home, concluded with petitioners' returns being approved as submitted. In 1970, according to petitioners, their employee business expense and miscellaneous deductions specifically were audited and allowed, based *766 on a finding that Indialantic, Florida, was indeed petitioner's tax home. Although petitioners do not invoke the specific terminology of estoppel, they seem to be arguing that respondent somehow should be estopped, collaterally or equitably, from claiming that petitioner's tax home is in Maryland for the years in issue when, in previous years, she accepted that it was located in Florida. Under collateral estoppel, or issue preclusion, a judgment in a prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Collateral estoppel, however, is not applicable in the case of prior settlements or prior audits, as are involved here, since neither entails a final judgment on the merits of a previously litigated issue. See Kroh v. Commissioner, 98 T.C. 383, 398 (1992). With regard to the doctrine of equitable estoppel (under which a party is precluded by his own actions from exercising a right otherwise exercisable), we start from the premise that the doctrine is applied against the Government "with the utmost *767 caution and restraint." Boulez v. Commissioner, 76 T.C. 209, 215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987). Acceptance by respondent of prior years' returns does not, per se, preclude respondent's determination of tax liabilities for other years. See, e.g., Burlington Northern Railroad v. Commissioner, 82 T.C. 143, 146 (1984); Davies v. Commissioner, T.C. Memo. 1981-438. For the doctrine of equitable estoppel to apply, petitioners would have to show, as a threshold matter, some reliance, to their detriment, on the actions of respondent, Boulez v. Commissioner, supra at 215, and that, they have not done. On this record, the doctrine of equitable estoppel is inapplicable. See id.; Davies v. Commissioner, supra.
Petitioners have failed to sustain their burden of proving that petitioner's major duty post, and thus his home for tax purposes, was located in Indialantic, Florida. Accordingly, we hold that petitioner's tax home for the years in issue was located in Maryland. An appropriate *768 order will be issued. Footnotes
1. Rule 151(e)(3) provides in part as follows: In an answering or reply brief, the party shall set forth any objections, together with the reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which the objections are directed; in addition, the party may set forth alternative proposed findings of fact. In the instant case, the parties filed seriatim briefs, with respondent filing an opening brief and petitioners filing an answering brief. Petitioners' answering brief does not contain any objections to respondent's proposed findings. Accordingly, we must conclude that petitioners have conceded respondent's proposed findings of fact as correct, except to the extent that petitioners' proposed findings, contained in their answering brief, are clearly inconsistent therewith. See Estate of Stimson v. Commissioner, T.C. Memo. 1992-242; Cunningham v. Commissioner, T.C. Memo. 1989-260↩.
1. This category includes amounts incorrectly reported by petitioner on his Schedules C for the years in issue. ↩
2. The amounts represented in this category constitute income, primarily, if not wholly, attributable to Mrs. Hoeppner.↩
2. Petitioner cites Six v. United States, 450 F.2d 66 (2d Cir. 1971), for the proposition that, when a taxpayer engages in occupations in widely scattered places, his tax home is the same as the taxpayer's permanent residence or abode. While we question whether that statement represents an accurate reading of Second Circuit precedent, we note that appeal in this case lies to the Eleventh, and not the Second, Circuit. We are more persuaded by the tax home analysis applied in Markey v. Commissioner, 490 F.2d 1249 (6th Cir. 1974), than by the approach attributed to Six by petitioner. Gardin v. Commissioner, 64 T.C. 1079, 1083 n.6 (1975); Montgomery v. Commissioner, 64 T.C. 175 (1975). In any event, we believe that the factors actually considered in Six would lead to the same result as we reach on these facts. See Montgomery v. Commissioner, supra↩ at 180-181.