**Robert F. SIX and Ethel Merman Six, Plaintifffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 60, Docket 71–1433.**

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1971.

Decided Oct. 18, 1971.

---

Alan Scribner, New York City (Simon Presant and Presant & Presant, New York City, on the brief), for plaintiffs-appellants.

Michael Saltzman, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. and Alan B. Morrison, Asst. U. S. Atty., Southern District of New York, on the brief), for defendant-appellee.

Before LUMBARD, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal questions the standard to be applied in deciding whether food and lodging expenses incurred by an actress while in New York for her appearance in a Broadway show are deductible as traveling expenses "while away from home" in the pursuit of her business within the meaning of § 162 of the Internal Revenue Code of 1954, 26 U.S.C. § 162(a) (2). In view of our decision in Rosenspan v. United States, 438 F.2d 905 (2d Cir. 1971), handed down since the district court's decision, we remand the case for further proceedings in accordance therewith.

Certain facts found by the district court were not disputed. Plaintiff, the well-known entertainer Ethel Merman, was born, raised and educated in New York. During the period from 1930 to 1952 she worked professionally as an actress on the Broadway musical stage, starring in such hits as "Annie Get Your Gun" and "Call Me Madam" and appearing in various other less successful shows. In March, 1953, she married Robert F. Six, President of Continental Airlines, which had its headquarters in Denver. They purchased jointly a house in Englewood, Colorado, to which she moved with her two children by a prior

marriage. For the next seven years plaintiff and her husband each paid half of the expenses of maintaining the house, including taxes, insurance and mortgage interest.

Following her marriage to Mr. Six, plaintiff stayed at their home in Colorado except when she was engaged in Broadway or television shows (the latter in New York or California). In the summer of 1958 she negotiated a "run-of-the-show" contract to appear in a Broadway musical called "Gypsy" for a period not to exceed two years, which was terminable by her at the end of one year after the New York opening should the show fail to become a hit within 40 weeks. The contract required the Manager of the show to pay her board, lodging and other living expenses for each day of her absence from Colorado in connection with her services thereunder, continuing until her return to Colorado.

In or about December, 1958, plaintiff came to New York in preparation for rehearsals of "Gypsy" and signed a one-year lease for a furnished apartment at the Park Lane Hotel in Manhattan, where she took up residence. Rehearsals began in New York in February, 1959. The show opened in Philadelphia on April 11, 1959, ran there until May 16, opened in New York five days later and continued running in New York until March 25, 1961, when it closed.

Plaintiff performed in "Gypsy" throughout its run, *i. e.*, from May 21, 1959 to March 25, 1961. In December, 1959, she renewed her lease on the Park Lane apartment, and in December, 1960, she was divorced from Mr. Six. Throughout the calendar year 1959 her employer, in accordance with the terms of the contract, paid her board, lodging and other expenses, including the Park Lane apartment rental, and she continued to pay one-half of the expenses of the house in Colorado. The Commissioner of Internal Revenue made an assessment against her of additional income taxes for the year 1959 totalling $32,-949.11, later reduced by agreement of the parties to $24,662.22, of which $20,-

625.81 were based on New York hotel expenses paid by the producers of "Gypsy" and $4,036.41 were based on her transportation costs paid by the producers. She paid the deficiency and sued for a refund, claiming that the expenses were deductible pursuant to § 162 of the Internal Revenue Code of 1954, 26 U.S.C. § 162(a) (2) which provides:

"Sec. 162. *Trade or business expenses*

"(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

"(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business \* \*."

Prior to our recent decision in *Rosenspan, supra,* there had been differing views as to how the phrase "away from home" should be interpreted in resolving a claim by a taxpayer maintaining living quarters in two locations, one at his place of employment, that he should be entitled to deduct expenses for the latter under § 162(a) (2). The interpretation advocated by the Commissioner, principally on the basis of Commissioner of Internal Revenue v. Stidger, 386 U.S. 287, 290–291, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967), has been that "home," as used in that section, means the taxpayer's "principal or regular place of business or employment," Rev.Rul. 60–189, 1960–1 Cum.Bull. 60, 61; see also Peurifoy v. Commissioner of Internal Revenue, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958); Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), and that a taxpayer should therefore not be entitled to deduct expenses for living quarters at his principal place of business although he maintains another abode elsewhere which he considers to be his "home." Viewing this definition as having been accepted by us in O'Toole v.

Commissioner of Internal Revenue, 243 F.2d 302, 303 (2d Cir. 1957), Judge Cannella found "that Miss Merman's business contacts and activities in New York City were greater in both number and importance than those in Englewood, Colorado and that New York City was therefore her principal place of business in 1959." 322 F.Supp. 547, 549 (S.D. N.Y.1971). Accordingly he dismissed her complaint.

Ten days after Judge Cannella's decision another panel of this Court decided in *Rosenspan, supra,* after a thorough review of § 162(a) (2) and authorities interpreting it, that "home" as used in that statute means the taxpayer's permanent abode or residence rather than his business headquarters (which had been treated by the IRS as a fictional "tax home"). The rationales of the Supreme Court's decisions in *Flowers, Peurifoy* and *Stidger, supra,* and of our decision in *O'Toole, supra,* were found on their facts to be consistent with this construction of the statute. 438 F. 2d 905, 908–910.

■ Accepting *Rosenspan* as the law governing this case, the standard is not that applied by the district court (i. e., whether Miss Merman's principal place of business was in New York or Colorado) but whether she was entitled to continue to treat Colorado as her permanent abode or residence during the period of her performance in "Gypsy," i. e., whether, under the circumstances, she should be deemed to have moved her home, as that word is generally understood, to New York. If her home is found to be New York, then of course the deduction is inappropriate because she will have failed to satisfy the second statutory condition, as set out in Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), that the expenses be incurred "while away from home."

■ Miss Merman may not be allowed a deduction unless she also satisfies the third condition of the statute as well, that is, the expenses incurred in New York were "in the pursuit of a trade or business." (This condition was not argued below, the parties having joined issue solely on the question whether Miss Merman's "home," as defined by the Commissioner and rejected in *Rosenspan,* was in Colorado or New York.) To satisfy the third condition, that the expenses be incurred in pursuit of business, Miss Merman would normally have to demonstrate "a direct connection between the expenditure and the carrying on of the trade or business," *Flowers, supra,* at 470, 66 S.Ct. at 252. However, an exception has been engrafted onto this third condition, in cases where the taxpayer's stay away from home was indefinite or temporary.[1]

The key inquiry which must be made then is whether, under all the circumstances, Miss Merman's residence in New York during 1959 may be viewed as temporary in nature or as sufficiently indefinite to expect that a reasonable person in her position would pull up stakes and make her permanent residence in New York. This finding will determine not only whether Colorado must be taken to be Miss Merman's tax home during 1959, but also, under the above exception, whether her expenses in New York were incurred in pursuit of a trade or business.

1. The exception originally arose to mitigate the harshness of the Commissioner's definition of "home" in regard to taxpayers whose assignments were only temporary. Under the old definition, they would be unable, without the exception, to take a deduction because they were not considered to be "away from home." Later the exception was seen as applicable to both the second and third conditions in *Flowers.* See Commissioner of Internal Revenue v.

Peurifoy, 254 F.2d 483 (4th Cir. 1957), aff'd per curiam, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958); *Rosenspan, supra,* 438 F.2d at 909, 912; 49 Va.L.Rev. 136–45 (1963). As to the second condition, the relief provided by the exception is *no longer necessary* in view of the rejection of the Commissioner's definition. As evident here, however, it may still apply as to the third condition.

"When an assignment is truly temporary, it would be unreasonable to expect ·the taxpayer to move his home, and the expenses are thus compelled by the 'exigencies of business'; when the assignment is 'indefinite' or 'indeterminate,' the situation is different and, if the taxpayer decides to leave his home where it was, disallowance is appropriate, not because he has acquired a 'tax home' in some lodging house or hotel at the worksite but because his failure to move his home was for his personal convenience and not compelled by business necessity." *Rosenspan, supra* 438 F.2d at 912.

Although the district court did not apply the foregoing standard, much relevant evidence was received by it. Some circumstances appear to favor an inference that her stay in New York was a temporary one (*e. g.*, the size of her investment in, and monthly upkeep of, the Colorado house; her prior residence in Colorado from 1953–1958; her marriage to Mr. Six, who continued to live in the Englewood home; her prior appearances in New York shows that had had somewhat shorter runs and the possibility that "Gypsy" might meet a similar fate; her reservation of the right to terminate her contract if "Gypsy" failed to become a hit within 40 weeks; her failure to move her furniture to New York, etc.). Other evidence points in the opposite direction (*e. g.*, testimony that by April, 1959, "Gypsy" could reasonably anticipate a long run, which did later occur; Miss Merman's signing of a one-year lease of an apartment in New York, which she renewed; her enrollment of her son in Hackley School, Tarrytown, N. Y.; her birth, education and prior professional history in New York; her personal investment in "Gypsy"; her failure to spend any time at the Colorado residence in 1959 except for a few days in June; her estrangement, divorce and later resumption of residence in New York after a road show tour).

■ While we perhaps could resolve the issue on the present record, we are in no position to appraise the credibility of the witnesses who appeared before Judge Cannella, or the weight to be accorded to their testimony. Furthermore, the parties may desire to offer additional proof in the light of our decision. Accordingly, the decision of the district court is remanded to it for further proceedings and findings in accordance with this opinion.