GEORGE P. LEYLAND and MARY F. C. LEYLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leyland v. Commissioner
Docket No. 6454-73.
United States Tax Court
T.C. Memo 1975-346; 1975 Tax Ct. Memo LEXIS 28; 34 T.C.M. (CCH) 1502; T.C.M. (RIA) 750346; December 1, 1975 Filed Nathan B. Sloan, for the petitioners. E. Noel Harwerth, *29 for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies in the joint Federal income tax returns of the petitioners in the amounts of $4,501.29 and $4,054.68 for the taxable years 1968 and 1969, respectively. Due to concessions by the parties, the issues for our decision are as follows: (1) Whether either petitioner was "away from home" within the meaning of section 162(a)(2) [1] during the taxable years 1968 and 1969; and (2) Whether the petitioners are entitled to deductions for rental losses for the years in question. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners George P. Leyland and Mary F. C. Leyland are husband and wife. At the time of filing their petition in this case petitioners were residents of New York, New York. Petitioners jointly filed Federal income tax returns for the taxable years 1968 and 1969 with the North Atlantic Service *30 Center, Andover, Massachusetts, and amended returns for said years with the District Director of Internal Revenue, Boston, Massachusetts. Prior to September 1968, Mr. Leyland was employed by the Bureau of the Census of the United States Department of Commerce (hereinafter referred to as the "Bureau") in New Haven, Connecticut, and Mrs. Leyland was employed in business as a consultant to International Business Machines Corporation (hereinafter referred to as "IBM") in New Haven, Connecticut. In September 1968, Mr. Leyland enrolled at the Harvard Business School in Boston, Massachusetts, at the request of the Bureau and was a participant in an in-service training program of the Bureau. During the time that Mr. Leyland attended the Harvard Business School he remained employed at the Bureau. Beginning in October 1968, Mrs. Leyland was required to perform services for IBM at its facility in Cambridge, Massachusetts, as well as at IBM's facility in New Haven, Connecticut. Prior to October 1968, petitioners resided in New Haven in a four-story, 30-unit apartment complex. In October 1968, petitioners gave up their apartment in New Haven, Connecticut, and Mr. Leyland rented an apartment *31 in Cambridge, Massachusetts. The Bureau paid Mr. Leyland's moving expenses to Cambridge in the amount of $429. At the same time, petitioners became members of the New Haven Lawn Club (hereinafter referred to as the "Lawn Club") which had living accommodations available to its members. Mr. Leyland thereupon took a room at the Lawn Club. The Lawn Club had tennis courts and 15 private rooms. Each room had a bathroom, a bed, closets, dressers and chairs. The petitioners selected the Lawn Club for security reasons; also the cost of maintaining a room at the Lawn Club was less than maintaining an apartment. In 1968, Mr. Leyland intended to return to New Haven, but not to the Lawn Club. When petitioner, Mr. Leyland, traveled to New Haven on business during 1968 and 1969 he was paid a per diem by the Bureau. Mr. Leyland stayed with his wife at the Lawn Club. From October 1968 through April 1969, Mrs. Leyland made 28 trips between New Haven and Boston, on account of which petitioners deducted $2,469.89 and $1,105.26 in 1968 and 1969, respectively, for business and travel expenses and for the cost of meals and lodging of Mrs. Leyland while in New Haven. When Mrs. Leyland traveled to *32 Boston she received per diem payments from IBM totaling $450 in 1968 and $635 in 1969. In 1968 and 1969, Mr. Leyland made ten trips between New Haven and Boston on account of which petitioners deducted $20 and $210 in 1968 and 1969, respectively, for unreimbursed business travel expenses and for the cost of meals and lodging of Mr. Leyland while in New Haven. In April 1969, Mrs. Leyland terminated her business relationship with IBM and was employed as an independent consultant in Massachusetts during the remainder of 1969. In June 1969, Mr. Leyland was assigned by the Bureau to a new job which would require his transfer to Maryland. Mr. Leyland declined to accept such assignment and, therefore, gave notice that he intended to terminate his employment relationship with the Bureau. Mr. Leyland ceased to be employed by the Bureau in September 1969. In June 1969, Mr. Leyland began working as an independent consultant in the field of the use of computers in sociological analysis. His business was conducted from his office in petitioners' apartment in Cambridge, Massachusetts. During the remainder of 1969, he performed work as a consultant in this field for various private clients. *33 Respondent has conceded petitioners' right to deduct travel expenses in the amount of $5,569 incurred in the taxable year 1969 by Mr. Leyland in his work as a private consultant. In the original returns filed by petitioners for the taxable years 1968 and 1969, they claimed Boston, Massachusetts, as their tax home. In the amended returns filed by petitioners for the years 1968 and 1969, petitioners alternatively claimed that their home for income tax purposes was New Haven, Connecticut, during these periods. In the amended returns for 1968 and 1969, Mr. Leyland claimed as a business expense in connection with his attendance at the Harvard Business School, deductions in the amounts of $1,909.31 and $3,208.52, respectively. In the amended returns for 1968 and 1969, Mrs. Leyland claimed as a business expense in connection with her work for IBM, deductions in the amounts of $1,727.00 and $1,016.52, respectively. On July 15, 1964, petitioners jointly purchased for $8,640, approximately 3.68 acres of unimproved shorefront real property on Fishers Island, New York, an island located in the vicinity of Long Island Sound, known as the Great Peconic Bay. Fishers Island was primarily used *34 as a summer resort or residence. The commuting distance from New York City involved a 2-hour and 15-minute ride by train and a 45-minute ride by ferry. The ferry to Fishers Island operated twice each day in the winter and three times each day in the summer. Most of the summer residents do not commute from the island but remain there during the entire period of their stay. Rentals on Fishers Island are monthly or for the full season, which usually constitutes the months of July and August. There were two private golf courses on Fishers Island, but no public recreational facilities. The island was also accessible by plane from New York City on a regular schedule. Most of the houses on Fishers Island were built to accommodate large families. On October 6, 1967, petitioners entered into a contract with A. J. Gada, a local contractor, for the construction of a house on the property. During the taxable year 1967, petitioners expended an aggregate of $37,852.25 to construct such a house. During the taxable years 1967, 1968 and 1969, petitioners expended an additional $12,156.09 for the purchase of furnishings for the house. The house which was constructed by petitioners differed from *35 the usual house on Fishers Island in that it was designed for two people without children. The house was located some distance from the conventional summer homes on Fishers Island. The petitioners' property encompassed 900 feet of shorefront which was 30 feet above the water. The property did not provide a beach nor was there accessibility to a beach. During the taxable years involved in this proceeding, the petitioners' house was not heated. Originally, petitioners planned to build three homes on the property. Apparently this plan was abandoned as a result of the costs incurred in the building of the first house. In the taxable year 1968, petitioners listed the house for rental with local real estate brokers. However, the house was not rented for the 1968 season. During the summer months of 1968 petitioners spent the following time periods on Fishers Island: May 30
4 days
June 7
4 days
June 12
3 days
June 21
4 days
June 28
5 days
July 3
2 days
July 5
4 days
July 20
3 days
July 27
2 days
August 3
3 days
August 10
3 days
August 17
2 days
August 24
2 days Much of that time was spent working on the plantings and otherwise completing the house. *36 The interior of the house had not been painted. The petitioners also brought friends over to the house during the 1968 season. During the years 1968 and 1969 petitioners paid $2,559.47 and $2,611.17, respectively, in interest on a bank debt secured by a mortgage on petitioners' Fishers Island property. During the years 1968 and 1969, petitioners paid $419.42 and $1,911.66, respectively, in real estate taxes on the Fishers Island property. In their 1968 and 1969 tax returns petitioners deducted $4,827.68 and $3,989.62 (exclusive of taxes, interest and depreciation), in connection with their Fishers Island property including expenses for electricity, travel, water, insurance, telephone, advertising and maintenance. In their 1968 and 1969 tax returns petitioners also deducted depreciation expenses of $6,950.11 and $3,732.44, respectively, for depreciation on the house and the personal property therein (including additional first-year depreciation in respect of the personal property) in such years. In the taxable year 1969, the petitioners advertised the house for rent in Town and Country Magazine. As a result of that advertisement, the petitioners rented the house for the *37 month of August 1969, for a total of $1,750. Since that time petitioners have offered the house for rental from time to time for the months of July and August, but have never rented the house for the full season. During the taxable years 1968 and 1969, the rental value of the house for the months of July and August was approximately $3,500. During the summer months of 1969, petitioners spent the following time periods on the island: May 31
4 days
June 13
3 days
June 19
6 days
July 3
5 days
July 7
3 days
July 18
4 days
July 24
5 days
August 15
1 day
Petitioner George Leyland's tax home from October 1968 to May 1969 was Boston, Massachusetts. Petitioner Mary Leyland's tax home from October 1968 to May 1969 was New Haven, Connecticut. Petitioners did not construct their house on Fishers Island for the purpose of making a profit on rentals. Petitioners' property on Fishers Island was not property held primarily for the production of income but was for the petitioners' personal use and enjoyment. OPINION The first issue presented for decision relates to travel and other expenses incurred by the parties while away from their home in pursuit of their *38 respective businesses or professions. Section 162(a)(2) provides, as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * The determination of a taxpayer's "home" within the meaning of the statute has given rise to varying interpretations by the courts. For discussion of such decisions, see Rosenspan v. United States,438 F.2d 905 (2d Cir. 1971) and Six v. United States,450 F.2d 66 (2d Cir. 1971). The parties are in agreement that prior to October 19, 1968, the petitioners resided in New Haven, Connecticut, and for purposes of such determination, New Haven was both their permanent place of abode and their "tax home." The respondent contends that New Haven remained the tax home of Mrs. Leyland at all times material herein, even though her *39 husband may have moved to Boston, Massachusetts, because there had been no change in her employment with IBM which could result in her acquiring a new home for tax purposes. With this, the petitioners are now in agreement. The respondent further contends that Mrs. Leyland is not entitled to deduct expenditures incurred by her while in Boston in connection with her employment by IBM in excess of the amounts for which she was reimbursed by her employer. Respondent does not, however, seriously urge that position. To the extent that Mrs. Leyland expended funds in excess of the amounts for which she was reimbursed while in Boston on business of her employer, she is entitled to an additional deduction. Section 162(a). See sections 1.162-17(b)(3) and 1.274-5(e)(2)(iii), Income Tax Regs.
The respondent also contends that although Mr. Leyland was temporarily transferred to Boston, Mass., by his employer (the Bureau) in order that he might attend the Harvard Business School, Mr. Leyland is not entitled to deduct the living expenses incurred while there on a temporary assignment because he elected to give up his former place of abode in New Haven, Conn., and took up residence in Boston, making *40 it his actual place of residence. Respondent's position is predicated on the contention that when he moved to Boston, Mr. Leyland no longer had a home in New Haven "to be away from." See Rosenspan v. United States,supra.[2]
On the basis of the facts presented here, it is not necessary to decide whether the room which was rented at the Lawn Club in New Haven constituted a sufficient home for Mr. Leyland, so that when he was in Boston it could be claimed that he was on a travel status away from home. Under different circumstances, it cannot be said that a rented room cannot be a taxpayer's "home" for tax purposes. The fact is that although his assignment to Boston was temporary, Mr. Leyland chose to make that his home both actually and in his relationship with his employer. Cf. Six v. United States,supra.Mr. Leyland obtained reimbursement for moving his furniture to Boston and was paid a per diem as being on a travel status when he traveled from Boston to New Haven for the Bureau. As a result, notwithstanding *41 the common law rule that the domicile of the husband is the domicile of the wife, for tax purposes the petitioners each ended up with a separate "home." Mrs. Leyland's home remained in New Haven. Mr. Leyland moved his home to Boston. Arthur B. Hammond,20 T.C. 285 (1953), affd. 213 F.2d 43 (5th Cir. 1954); Robert A. Coerver,36 T.C. 252 (1961), affd. 297 F.2d 837 (3d Cir. 1962). When Mrs. Leyland went to Boston on business, she was entitled to deduct the expenses connected therewith. When Mr. Leyland went to New Haven on business, he was entitled to deduct the expenses connected with those trips. The amounts are not in dispute and the issue will be resolved on that basis. The remaining issue relates to the question whether petitioners may deduct expenses incurred with respect to a vacation home which they caused to be built on Fishers Island, New York, including not only interest and taxes, but depreciation and the cost of numerous visits which petitioners claimed were undertaken to prepare the residence and to maintain the property in order that it might be rented. There is no dispute with respect to the interest and *42 taxes whether as expenses incurred in the rental of the residence or as personal deductions. Such expenses for the taxable years 1968 and 1969 amounted to $2,978.89 and $4,522.83, respectively. However, the petitioners claim additional expenses, aggregating $12,566 for the taxable year 1968 and $9,509 for the taxable year 1969, including depreciation, utilities, telephone service and the expenses of numerous visits to the property made by the petitioners. In order to sustain the deduction for the amounts in dispute, the petitioners must show that the property was held for use in the trade or business of the taxpayer within the meaning of section 162 or was held for the production of income within the meaning of section 212. In either case, there must be a realistic intent on the part of the taxpayer to produce income or gain from the rental of the property. The facts belie such intent in this case. The fair rental value of the house on Fishers Island for the July-August months, which was the "season" for summer rentals, amounted to not more than $3,500. If the rental season is extended to include the month of June, the maximum rental value for the season would be about $5,000. *43 The petitioners claimed total expenses of $15,545 for the taxable year 1968 and $14,032 for the taxable year 1969. Even assuming that many of these expenses were in fact personal vacation expenses of the petitioners, the remaining expenses would still exceed any income which the property could reasonably be expected to yield. It may well be that when petitioner purchased the land on Fishers Island and contracted for the erection of the house, it was their intention to erect additional houses on that site for sale at a gain. It does not appear that the petitioners ever intended to sell the original house, which they still own. After the petitioners had built this house, the extent to which it has been rented would not justify a finding that the house had been converted from a personal residence to a property held for the production of income. The court is unable to prorate the expenses claimed to the period for which the house on Fishers Island was rented in 1969. Much of the expense was incurred in making the house more habitable, both for the petitioners as well as for any prospective tenant. Notwithstanding that section 183, enacted as section 213(a) of the Tax Reform Act of *44 1969 (P.L. 91-172), was effective for taxable years beginning after December 31, 1969, respondent has permitted the deduction of an amount equal to the rent received for the taxable year 1969. The Court is satisfied that the amount properly allocable to the month of August 1969 would exceed the rent received for that month. Accordingly, respondent's determination will be sustained. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. For an example of the application of this rule to similar facts, see Larry R. Adamson,T.C. Memo. 1973-107↩.