THOMAS W. AND MARGARET J. McDOUGAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McDougal v. Commissioner
Docket No. 10309-77.
United States Tax Court
T.C. Memo 1980-289; 1980 Tax Ct. Memo LEXIS 292; 40 T.C.M. (CCH) 841; T.C.M. (RIA) 80289; August 4, 1980, Filed *292 Petitioner-husband was an outside salesman for an automotive parts seller whose only office was in Rochester, New York. Petitioners' residence was in Corning, New York. Held: (1) Petitioners are not entitled to deduct petitioner-husband's expenses as traveling expenses while away from home in the pursuit of a trade or business. Sec. 162(a)(2), I.R.C. 1954. (2) Petitioner-husband's deductible automobile expenses determined. Sec. 162(a), I.R.C. 1954. Robert M. Tyle, for the petitioners. David R. Smith, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1975 in the amount of $2,486.68. After settlement of many issues, the issues for decision are: (1) whether petitioners are entitled to deductions for "away from home" expenses under section 162(a)(2), [1] and (2) whether petitioners are entitled to deduct automobile expenses under section 162(a). FINDINGS OF FACT Some of the facts have been stipulated; the stipulation *293 and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Thomas W. McDougal (hereinafter sometimes referred to as "McDougal") and Margaret J. McDougal, husband and wife, resided in Corning, New York. Since 1961, at least through the time of the trial in this case, McDougal has been employed by Fasino's Power Brake, Inc. (hereinafter sometimes referred to as "Fasino's"), a company that sells automotive heavy-duty truck parts and contractors' supplies. In 1964, McDougal became a sales manager for Fasino's, a position which he still held at the time of the trial in this case. During 1975, McDougal was employed as a sales representative/area sales manager for Fasino's, whose only business office was in Rochester, New York. In 1961, when McDougal first began to work for Fasino's, he lived in Rochester. In 1964, petitioners moved to Corning and bought their home there. Petitioners moved to Corning because (1) they had just gotten married and there had been riots in Rochester and (2) McDougal had just been assigned the "southern tier" (the New York State counties bordering on Pennsylvania) as his sales territory and *294 Fasino's had asked him to move into that area. Petitioners have maintained their residence in Corning from 1964, at least through the time of the trial in this case. Corning is approximately 115 miles from Rochester. During 1975, McDougal's sales territory consisted of the New York State area between Rochester and Red Creek (along Lake Ontario), and Hornell and Binghamton (in the southern tier). The territory was smaller than the area covered by McDougal when he moved to Corning, in 1964. In maintaining this territory, McDougal personally called on customers, took orders, made deliveries, and performed service work on parts that he had sold. Sometimes McDougal found it necessary to take parts into Fasino's office for evaluation, repairs, or exchange. During 1975, McDougal delivered his orders to Fasino's office, in Rochester, every workday, either in the evening after finishing his daily sales route, or in the morning before proceeding to service his area for that day. He also checked in to the office to pick up messages or to bring in parts. McDougal's routine in 1975 was to leave his residence in Corning on Monday morning, service his sales territory during the week, and *295 return to Corning on Friday evening. McDougal stayed overnight at his parents' home, in Rochester, on Monday, Tuesday, Wednesday, and Thursday nights, during the work week. McDougal incurred no expenses for lodging while staying overnight at his parents' home. He rarely ate his meals at his parents' home, but generally purchased his meals at restaurants. On a typical Monday, McDougal left his residence in Corning in the morning and followed a route eastward to Elmira and Binghamton, thence northwest to Ithaca, Seneca Falls, Geneva, and Waterloo. His last stop on Monday was usually in the Geneva-Waterloo area, which is somewhat closer to Rochester than to Corning. McDougal took his orders to Fasino's office on Monday evening if he could arrive there in sufficient time to do so. McDougal went to his parents' home on Monday evening. On a typical Tuesday, McDougal left his parents' home, took Monday's orders to Fasino's office if he had not done so the prior evening, and proceeded to service an area including Lyons, Newark, Phelps, Clifton Springs, and Palmyra. This is the area immediately north and northwest of the Waterloo-Geneva area. McDougal's Tuesday area is closer to Rochester *296 than is the Waterloo-Geneva area. McDougal's last stop on Tuesday was usually in Palmyra. McDougal returned to his parents' home on Tuesday evening. On a typical Wednesday, McDougal took his Tuesday orders to Fasino's office, and proceeded to service an area along New York State route 104 to the northeast of Rochester, as far as Red Creek. McDougal's Wednesday area is immediately north and northeast of his Tuesday area; it is between his Tuesday area and Lake Ontario.He serviced the area in a crisscrossing fashion so as to make his last stop near Rochester. McDougal returned to his parents' home on Wednesday evening. On a typical Thursday, McDougal primarily serviced his accounts in the Rochester metropolitan area. This generally included Henrietta, Pittsford, and Webster, as well as any customers in the Rochester area that he may have missed earlier in the week. He often conferred on Thursdays with the salesmen he supervised. He returned to his parents' home on Thursday evening. On a typical Friday, after any conference in Rochester, McDougal proceeded south by way of Hornell, servicing that area and returning to Corning. During 1975, about 35 percent of McDougal's total sales *297 were to customers in the Rochester metropolitan area, about 35 percent to customers in the southern tier, and the remaining 30 percent in the outlying areas to the east and south of Rochester. During 1975, McDougal also supervised the activities of two outside salesmen who serviced the area of upstate New York between Buffalo (in the west) and Malone (in the east), that was not in McDougal's sales territory. This supervision entailed McDougal occasionally accompanying the salesmen on calls to their customers, transferring orders, and giving them sales help. Once or twice in almost every week, McDougal held a sales meeting with the two outside salesmen. These meetings were usually held in Rochester over breakfast or lunch, often at a diner around the corner from Fasino's office. Occasionally, McDougal met the salesmen at Batavia (in the west) or Syracuse (in the east). About eight times during 1975 McDougal drove to Plattsburgh, Malone, Watertown, or other localities in northeast New York State in connection with his supervisory duties. During 1975, McDougal maintained an expense journal in which he recorded for each day amounts for parking, breakfast, lunch, dinner, tips on meals, *298 car washes, phone calls, and road tolls, and daily total automobile mileage. Except for entertainment expenses (most of the time involving meetings with the outside salesmen McDougal supervised), the journal includes no information as to customers, locations, dates or purposes of business trips, mileage between business stops, order of business stops, or odometer readings. McDougal was not reimbursed by Fasino's for his expenses, nor did he submit expense reports to Fasino's. On their 1975 Federal individual income tax return, petitioners claimed deductions totaling $10,542.39 [2] "above the line" in connection with McDougal's employment as a sales representative/area sales manager for Fasino's. All of these deductions were disallowed in the notice of deficiency. The amount and current status of each of these claimed deductions is shown on table 1. Table 1 Item
Amount
Status
Business Mileage - Auto
In dispute
15,000 mi. at.15/mi.
$ 2,250.00
39,451 mi. at.10/mi.
3,945.10
Meals
2,321.35
In dispute
Business Entertainment
525.30
Resp. concedes
Parking
116.20
Resp. concedes
Car Hosting
237.85
Pet. concede
Telephone Enroute
342.80
Resp. concedes
Highway Tolls
79.65
Resp. concedes
Telephone Tolls - Home
155.69
Resp. concedes
Telephone - 1/2 Business Use
72.30
Resp. concedes
Tips on Meals
493.15
In dispute
Expense Book
3.00
Resp. concedes
TOTAL
$10,542.39
*299 OPINION 1. "Away From Home" Expenses--Section 162(a)(2)
Petitioners maintain that McDougal was away from their Corning, New York, home during the work week, and so they should be allowed to deduct his meal (and meal tips) expenses and his automobile expenses (computed on a mileage basis). Respondent asserts that McDougal was not away from hime in pursuit of business. We agree with respondent. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 of the Internal Revenue Code of 1954 (sec. 262). [3]Section 162(a)(2)[4] *300 expressly permits a taxpayer to deduct what might otherwise be personal expenses if all the following requirements are met ( Commissioner v. Flowers, 326 U.S. 465, 470 (1946)): (1) The expense is a traveling expense (this includes such items as transportation fares and food and lodging expenses incurred while traveling); (2) The expense is incurred while "away from home"; and (3) The expense is an ordinary and necessary expense incurred in pursuit of a trade or business.
The parties disagree as to whether McDougal was away from home, and, if he was, whether he was away from home in pursuit of a trade or business. Respondent does not dispute the amounts of the meals and meal tips expenses; he concedes that they were "reasonable and necessary". This Court has held that as a general rule "home" as used in section 162(a)(2) means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. E.g., Daly v. Commissioner, 72 T.C. 190, 195 (1979), on appeal (CA4 Aug. 15, 1979); Foote v. Commissioner, 67 T.C. 1, 4 (1976); Garlock v. Commissioner, 34 T.C. 611, 614 (1960). McDougal's weekly routine required regular traveling over an area covering about *301 eleven counties in west central New York State. He resided in Corning, near the southern border of this area. His employer's only office was in Rochester, near the northwest corner of this area. Once the work week started, McDougal went to his employer's office, in Rochester, every day. He slept at his parents' home, in Rochester, every night except Friday. His daily routine was established so as to focus on Rochester. We conclude that Rochester was McDougal's tax home. Except for McDougal's weekends at his residence in Corning, he was not away from home overnight (or on a trip requiring him to sleep or rest) on any of his daily travels. On these daily travels, McDougal was not away from home, within the meaning of section 162(a)(2). United States v. Correll, 389 U.S. 299 (1967). McDougal's weekend trips also did not give rise to deductions under section 162(a)(2), since these trips ended at his residence. Mazzotta v. Commissioner, 465 F.2d 1399 (CA2 1972), affg. per curiam 57 T.C. 427 (1971). As a result, under this Court's precedents, petitioners are not entitled to take any of the disputed deductions under section 162(a)(2). The Court of Appeals for the Second Circuit *302 approaches these questions somewhat differently, but we conclude that it would reach the same result in the instant case. In Rosenspan v. United States, 438 F.2d 905 (CA2 1971), the Court of Appeals reviewed the law in this area and concluded that "home" does not mean "business headquarters", but rather "that 'home' means 'home'". 438 F.2d at 912. In Commissioner v. Flowers, supra, Mr. Flowers resided in Jackson, Mississippi, but had his principal place of business in Mobile, Alabama. As the Court of Appeals in Rosenspan (438 F.2d at 911) analyzed the Flowers situation, Mr. Flowers would get no deduction for his lodging and meals while in Mobile even if he was "away from home" while there. The deduction would not have been available to his fellow workers living in that city who obtained similar amenities in their homes or even in the very restaurants that Flowers patronized, and Flowers was no more compelled by business to be away from his home while in Mobile than were other employees of the railroad who lived there. The Court of Appeals in Rosenspan concluded that Mr. Rosenspan was not away from home, within the meaning of section 162(a)(2), because he had no home to be away *303 from. In Six v. United States, 450 F.2d 66 (CA2 1971), the Court of Appeals reaffirmed its Rosenspan position. In Six, the Court of Appeals remanded to the district court for a determination as to whether Mrs. Six's home was in New York, New York, or in Englewood, Colorado. If Mrs. Six's home were to be determined to be in Colorado, then the question would arise as to whether her New York expenses were directly connected with her carrying on her trade or business, taking into account the principles of Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958), as to temporariness or indefiniteness of her stay away from Colorado. 450 F.2d at 69. A place of business is a "temporary" place of business under the principles of Peurifoy if the employment is such that "termination within a short period could be foreseen." Albert v. Commissioner, 13 T.C. 129, 131 (1949). See Michaels v. Commissioner, 53 T.C. 269, 273 (1969). Or, viewed from the other side of the coin, an employment is for an "indefinite", "substantial", or "indeterminate" period of time if "its termination cannot be foreseen within a fixed or reasonably short period of time." Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. *304 438 F.2d 1216 (CA6 1971). "Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner, 49 T.C. 557, 562 (1968). These are questions of fact ( Peurifoy v. Commissioner, 358 U.S. at 60-61), as to which petitioners have the burden of proof ( Daly v. Commissioner, 72 T.C. at 197). Applying these concepts, we see that if one of McDougal's fellow workers had lived in Rochester but otherwise followed McDougal's routine, then that fellow worker would not have been entitled to deduct expenses under section 162(a)(2), because he or she would not have been away from home overnight. Also, the Peurifoy rule does not help petitioners herein because there has been no showing that the Rochester focus of McDougal's work in 1975 was "temporary", or that McDougal expected it to be of short duration. See Six v. United States, 450 F.2d at 70. In addition, when we examine McDougal's daily routine, we see that (1) he reported to Fasino's Rochester office every weekday (except from time to time on Monday), (2) *305 most of his business contacts were closer to Rochester than to Corning, [5] *306 and (3) although he did some business closer to Corning than to Rochester, the bulk of his Corning time was on the weekends when he was not working. McDougal testified as to mixed personal and business reasons for moving to Corning in 1964. As his sales pattern had developed by 1975, however, it is difficult to see any significant 1975 business purpose for keeping his residence so far from Rochester. We conclude that (as the Court of Appeals suggested would occur "in the overwhelming bulk of cases arising under § 162(a)(2)," ( Rosenspan v. United States, 438 F.2d at 911)) even if McDougal were treated as being away from home when he was away from his Corning residence, his expenses would not be deductible under the Second Circuit's analysis of the third requirement of section 162(a)(2)--because there is not a direct connection between the expenses and the requirements of the trade or business, as distinguished from the requirements of McDougal's preference for residing in Corning. Respondent asks us to apply the rule of Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (CA10 1971), because of the opinions of the Courts of Appeals for the Second Circuit in Rosenspan v. United States, supra, and Six v. United States, supra. We hold for respondent on the section 162(a)(2) issue because of our analysis of the statute and the decided cases, as applied to the facts as we find them. Since we conclude that the results are the same under our precedents as under the Second Circuit precedents, reliance on the rule in Golsen would not change the result and so is inappropriate in this case. Because of our conclusion that petitioners have failed to meet the requirements of section 162(a)(2), we do not consider respondent's argument that petitioners have failed to meet the substantiation requirements of section 274(d) as to McDougal's automobile expenses.
On this issue we hold for respondent. 2. Automobile Expenses--Section 162(a)
Petitioners *307 maintain that they are entitled to deduct McDougal's automobile expenses under the general rule of the lead-in language of section 162(a) (see n. 4, supra) in the amount claimed, because all the expenses were incurred in McDougal's employment as an outside salesman. [6] Respondent asserts that (1) petitioners have failed to substantiate the claimed expenses (or business mileage) and are entitled to no deduction therefor and, alternatively, that (2) petitioners are entitled to no deduction for the driving from McDougal's abode for the night to his first business stop for the day and from his last business stop for the day to his abode for the night. We agree with respondent that petitioners have failed to substantiate their claimed expenses and are not entitled to deduct the cost of McDougal's driving to his first and from his last business stop. However, we agree that *308 petitioners are entitled to deduct the expenses of McDougal's driving between his business stops each day. The portion of automobile expenses attributable to travel from a taxpayer's home to the place of business at which he or she first stops, and from the place of business where he or she makes the last stop to home, is nondeductible, whereas the portion of automobile expenses attributable to travel beween places of business is deductible. E.g., Steinhort v. Commissioner,335 F.2d 496, 504-505 (CA5 1964), affg. and remanding a Memorandum Opinion of this Court; [7] see Coombs v. Commissioner,608 F.2d 1269, 1277-1278 (CA9 1979), affg. on this point 67 T.C. 426 (1976). This principle is applied even if the home is a secondary place of business ( Mazzotta v. Commissioner,supra) or if the taxpayer does some work at home ( Daly v. Commissioner,supra). [8] *309 The burden is on petitioners to prove the amount of automobile mileage incurred by McDougal between his first and last business stops. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners rely on McDougal's expense journal for 1975 as the only direct evidence that he drove the business mileage claimed on the return. The parties have stipulated that McDougal maintained the journal during 1975. McDougal testified that the entries were made onto the expense journal every day, "the last thing in the evening, or maybe having coffee in the morning". However, the journal is in excellent condition, with each sheet (one week per sheet) unwrinkled and neat. The ink is uniform in color and intensity. The handwriting is remarkably uniform for large portions of the journal. [9] *310 After examining this exhibit we conclude that there is little basis for relying upon it as an accurate, reasonably contemporaneous record of McDougal's automobile mileage. The journal's usefulness is further diminished because it did not list daily odometer readings, mileage between stops (or even where stops were made), or distance between Rochester or Corning and the first or last stop of the day. On brief, petitioners assert that McDougal "did not record each stop made for two reasons: (1) his sales book records provided that information to him and (2) since his route primarily followed the same paths, he could at any time recreate the ininerary." The trouble with this explanation is that the record herein does not include any information as to what McDougal's sales book records would show and the record herein includes only general information about McDougal's itinerary. The only other evidence in the record bearing this matter is McDougal's testimony as to his typical daily routes. From this testimony, we estimate that petitioners are entitled to deductions for 20,000 miles of automobile expenses. Cohan v. Commissioner,39 F.2d 540 (CA2 1930), revg. 11 B.T.A. 743 (1928). To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.↩
2. On line 14 of their Form 1040, petitioners deducted $10,542.49. The ten cents difference is not explained by the parties; it appears to be a transcription error.↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES.
(a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *
5. All parts of McDougal's Tuesday, Wednesday, and Thursday routes were closer to Rochester than to Corning. Portions of his Monday and Friday routes were closer to Rochester than to Corning. All his testimony as to locations of meetings with the salesmen he supervised was as to meetings in Rochester or in cities closer to Rochester than to Corning.
6. Petitioners do not specifically assert this or any other alternative to their "away from home" position. However, the nature of McDougal's employment points to a conclusion that some deductible automobile expenses were incurred, and respondent's counsel appears to have acknowledged as much in his opening statement.↩
7. T.C. Memo. 1962-233↩. 8. Curphey v. Commissioner,73 T.C. 766, 777 (1980) and Dancer v. Commissioner,73 T.C. 1103 (1980) are distinguishable because in those cases the taxpayers' homes (or the immediate property around them) were principal places of business, while in the instant case the record does not disclose any such business use of petitioners' residence.
9. We note with interest the similarities between the journal in the instant case and the notebooks described in Rennie v. Commissioner,T.C. Memo. 1979-2 (especially note 5).