GRIFFITH T. AND DIANN P. HOLLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holland v. Commissioner
Docket No. 11327-86.
United States Tax Court
T.C. Memo 1988-51; 1988 Tax Ct. Memo LEXIS 51; 55 T.C.M. (CCH) 93; T.C.M. (RIA) 88051; February 18, 1988. Griffith T. and Diann P. Holland, pro se. *52 Cheryl Choy-Weller, for the respondent. PAJAK
MEMORANDUM FINDINGS OF FACT AND OPINION PAJAK, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-154, 100 Stat. 2755) and Rule 180 et seq. [1]
Respondent determined a deficiency in petitioner's Federal income tax for 1983 in the amount of $ 1,233. Respondent filed an amended answer in which he claimed an increased deficiency in the amount of $ 1,836, resulting in a corrected deficiency of $ 3,059. The issues for determination are: (1) whether certain jobs of petitioner-husband were temporary or indefinite during 1983 and (2) whether petitioners substantiated meals and lodging expenses under section 274(d) in excess of the amount allowed by respondent. FINDINGS OF FACT Petitioners resided in Voorheesville, New York, when their petition was filed. Petitioner *53 Griffith T. Holland (petitioner) is a journey man pipefitter by trade and a member of Local 7 of the Plumbers and Steamfitters Union (Local 7), Albany, New York area (Albany area). Petitioner's wife had full-time employment in that area. Petitioner has resided in the Albany area throughout his life. During 1982, petitioner was employed in Seabrook, New Hampshire, at a nuclear power plant. During that year, he returned to the Albany area and was employed in Selkirk, New York. When that job terminated he was not able to obtain work in the Albany area. Petitioner then left for a job in Oswego, New York, 180 miles away from Albany, New York, until he could obtain work in the Albany area. At all times while in the Oswego, New York area, petitioner maintained contacts with the business manager of Local 7 to obtain work near his home. Petitioner was hired on December 27, 1982 by ITT Grinnell Industrial Piping, Inc. (ITT) to work on the construction of the Nine Mile Point Unit II (Nine Mile) nuclear power plant located near Oswego, New York. Petitioner worked 28 days and earned $ 4,754.84 on that job in 1983. Petitioner returned to the Albany area and was employed either by *54 Flack's Power Piping, Inc. (Flack's) or John W. Warren Company (Warren). Petitioner worked for both companies in 1983, but he could not recall which employment was in the first part of 1983 and which one was in the latter part of 1983. Petitioner earned $ 5,968.46 on the Flack's job and $ 3,621.20 on the Warren job. When petitioner's Albany area job terminated, he was unable to find any pipefitting-welding work near his home in the Albany area. On May 2, 1983, petitioner was hired by John P. Bell & Sons, Inc./Bell Power Generation Service Corp. (Bell) to work at the James Fitzpatrick Nuclear Power Plant (Fitzpatrick) near Oswego, New York. That plant, built in the mid-1960's, was closed temporarily for about three months. A Bell official told petitioner that he was hired specifically for the three-month shutdown period, and that his job would terminate as soon as the Fitzpatrick plant became operational again. On July 22, 1983, the job ended as anticipated and petitioner returned to the Albany area. He worked 60 days and received $ 8,961.67 from the Bell job. Petitioner again obtained employment in the Albany area and worked for either Flack's or Warren. As indicated, *55 the record does not contain the exact dates of employment. When the Albany area job ended, petitioner again could find no pipefitting-welding work near his home in the Albany area. On September 12, 1983, petitioner was hired by Stone & Webster Engineering Corp. (Stone) to work again on the construction of the Nine Mile nuclear power plant near Oswego, New York. He worked on that job until March 16, 1984, when he quit to take jobs in the Albany area. During 1983, petitioner worked 80 days and earned $ 11,030.27 from the Stone job. During 1983, petitioner maintained the family home in the Albany area. During the periods petitioner was employed outside the Albany area, he rended lodging located within ten miles of the relevant job site. Petitioner drove to his home in the Albany area on almost every weekend during these periods of employment. On their 1983 return, petitioners claimed employee business expenses in the amount of $ 11,015, consisting of $ 7,800 for meals and lodging in the Oswego, New York area and $ 3,215 for car expenses. In the statutory notice of deficiency, respondent disallowed $ 4,776 of the claimed meals and lodging expenses as being unsubstantiated *56 under section 274. In his amended answer, respondent determined that the jobs petitioner held at the Oswego nuclear power plants during 1983 were indefinite and not temporary in duration, and that all travel, meals, and lodging expenses claimed by petitioners on their 1983 return were incurred at and not away from petitioners' tax home and thus were nondeductible personal living expenses under section 262. OPINION As a general rule, deductions for personal living expenses are disallowed under section 262. However, section 162(a)(2) [2] allows a deduction for traveling expenses incurred while away from home in pursuit of a trade or business. This Court has held that a taxpayer's "home" for purposes of section 162(a)(2) is the vicinity of the taxpayer's principal place of employment and not where his personal residence is located. *57 Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). An exception to this rule exists when a taxpayer accepts employment away from home which is temporary as opposed to indefinite. Peurifoy v. Commissioner,358 U.S. 59, 60 (1958). Employment is temporary if its termination is foreseen within a short period of time. Mitchell v. Commissioner, supra at 581; McCallister v. Commissioner,70 T.C. 505, 509 (1978). The Second Circuit Court of Appeals, to which an appeal in this case would lie, has defined "home" for purposes of section 162(a)(2) to mean the taxpayer's permanent abode or residence rather than his business headquarters. Six v. United States,450 F.2d 66, 69 (2d Cir. 1971); Rosenspan v. United States,438 F.2d 905, 911-912 (2d Cir. 1971), cert. denied 404 U.S. 864 (1971). Although the Second circuit has defined "home" differently from this Court, it will still apply the "temporary" versus "indefinite" test to determine whether the expenses at issue were incurred "in pursuit of a trade or business. *58 " In Rosenspan v. United States, supra at 912, the Second Circuit stated that: When an assignment is truly temporary, it would be unreasonable to expect the taxpayer to move his home, and the expenses are thus compelled by the "exigencies of business"; when the assignment is "indefinite" or "indeterminate," the situation is different and, if the taxpayer decides to leave his home where it was, disallowance is appropriate, not because he has acquired a "tax home" in some lodging house or hotel at the worksite but because his failure to move his home was for his personal convenience and not compelled by business necessity. Nevertheless, under this Court's or the Second Circuit's analysis, we reach the same result in this case. The determination of whether employment is temporary or indefinite is a question of fact. Peurifoy v. Commissioner, supra at 61. Respondent bears the burden of proof with respect to this issue since he first raised it in his amended answer. Achiro v. Commissioner,77 T.C. 881, 889-890 (1981); Rule 142(a). As this Court stated in Norwood v. Commissioner,66 T.C. 467, 470 (1976): "No single *59 element is determinative of the ultimate factual issue of temporariness and there are no rules of thumb, durational or otherwise." With no definite yardstick to determine whether a job is temporary or indefinite, both the Second Circuit and this Court have given serious consideration to whether, under the circumstances, it was reasonable to expect the taxpayer to move his residence to his current place of employment. Based on all the circumstances present in this case, we conclude that each of petitioner's three jobs outside the Albany area in 1983 were temporary and that it was not reasonable to expect petitioner to move his residence to the Oswego, New York area. Several factors, no one of them in itself determinative, support our conclusions. One factor is that petitioner had n steady employer but rather was hired as the need for pipefitters arose. Further, his employment was subject to periodic layoffs as evidenced by the layoffs from Albany area jobs, once in 1982 and twice in 19982. Petitioner took the ITT job at the Nine Mile nuclear plant near Oswego only because he could not find employment in the Albany area. He worked there for six weeks until he could find employment *60 in the Albany area. It would be unreasonable to expect petitioner to move his lifetime home for a 28 workday job. Petitioner returned to the Albany area on February 10, 1983, and stayed there for a three-month period. During that time he had substantial earnings from employment in the Albany area. When he could no longer find work in the Albany area, he took a short-term job with Bell at the Fitzpatrick nuclear plant. Coincidentally, this plant also was located near Oswego, New York. Petitioner was hired specifically for the three-month shutdown period. After this period, his job would end. Petitioner actually worked only 60 workdays at the Fitzpatrick plant. Petitioner knew that there was a limited duration to the Bell job, and that he would be able to return to his home in the Albany area soon. Petitioner in fact returned to the Albany area when the Bell job, involving 60 workdays, was completed on July 22, 1983, as anticipated. He remained in the Albany area and was able to earn substantial amounts from employment in that area. When he could no longer find employment in the Albany area, he again sought employment at the Nine Mile nuclear plant. He was employed by *61 Stone on September 12, 1983, and worked there for throughout the remainder of the year. Petitioner worked a total of 80 days for Stone in 1983. Again, we do not find it reasonable to expect petitioner to move his residence for that period of time. He actually worked for Stone until March 16, 1984, and again returned to work in the Albany area. During 1983, petitioner maintained his home in the Albany area and presumably paid taxes there. He had substantial employment in the Albany area and earned a total of $ 9,589.55 from those two jobs in 1983. Petitioner also had strong social and familial ties to the Albany area. He had lived there all his life, and his wife and children continued to live there during 1983. He remained a member of the local union. Petitioner incurred the type of duplicative living expenses caused by the necessity of maintaining a permanent home in one location while temporarily working and living on three separate occasions in another area which section 162(a)(2) was designed to ameliorate. See Rosenspan v. United States, supra at 912; Tucker v. Commissioner,55 T.C. 783, 786 (1971); Kroll v. Commissioner,49 T.C. 557, 562 (1968). *62 On the basis of the entire record, we conclude that the three jobs in question were temporary in 1983 and that petitioner incurred expenses for meals, lodging and travel away from his tax home. [3]
*63 Since respondent has failed to meet his burden of proof as to the issues raised in his amended answer, we turn to the question raised by the statutory notice of deficiency of whether petitioners have satisfied section 274 so as to be entitled to a deduction for meals and lodging in excess of the amount allowed by respondent. petitioners have the burden of proof on this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Under section 274(d) no deduction is allowed under section 162 for any traveling expense, including meals and lodging while away from home, unless the expense is substantiated by "adequate records" or by sufficient evidence corroborating the taxpayer's own statements. [4] The regulations provide that in order to satisfy the adequate records requirement, a taxpayer must maintain an account book, diary, statement of expense or similar record and documentary evidence (such as receipts or paid bills) which, in combination, are sufficient to establish each element of an expenditure. Sec. 1.274-5(c)(2)(i), Income Tax Regs. Under the regulations, "sufficient evidence" consists of (1) the taxpayer's own statement, whether written or oral, containing *64 specific information in detail as to such element, and (2) other corroborative evidence sufficient to establish such element. Sec. 1.274-5(c)(3), Income Tax Regs.
In the absence of any records, respondent allowed petitioners eighteen dollars a day for meals and lodging. Petitioners offered no evidence to substantiate their claim for meals and lodging. Thus, the substantiation requirements of section 274(d) have not been met with regard to any additional amounts claimed by petitioners for meals and lodging. Although we recognize that petitioner may have incurred expenses for meals and lodging in excess of the amount allowed by respondent, section 274 precludes us from making any approximation of such *65 amounts under Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). See Sanford v. Commissioner,50 T.C. 823, 827-828 (1958), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Accordingly respondent's determination on this issue is sustained. Decision will be entered for the respondent in the amount of the original deficiency.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable years in question, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 162 provides in pertinent part: (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * * * * (a) traveling expenses * * * while away from home in the pursuit of a trade of business * * *. ↩
3. We find unpersuasive respondent's reliance upon Hicks v. Commissioner,T.C. Memo. 1986-255 (employment with brief interruptions for over four years), Flippen v. Commissioner,T.C. Memo. 1986-235 (employment of two years and eight months) and Weston v. Commissioner,T.C. Memo. 1981-166 (employment of two years and seven months), all cases involving workers at the construction sites of nuclear power plants. The factual situations in those cases are not similar to the facts present here. We find the facts in this case are much like those in Saunders v. Commissioner,T.C. Memo. 1977-427, where another taxpayer with strong economic, social and familial ties in one area accepted employment in another area until he could locate employment nearer to his permanent address. See also Blankenship v. Commissioner, T.C. memo. 1979-366, and Davis v. Commissioner,T.C. Memo. 1979-47↩, for other examples of cases involving temporary employment. 4. Section 274(d) provides in pertinent part: (d) SUBSTANTIATION REQUIRED. -- No deduction shall be allowed -- (1) under section 162 * * * for any traveling expense (including meals and lodging while away from home), * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * * (B) the time and place of the travel * * * [and] (C) the business purposes of the expense * * *. ↩